**ANGLO CHINESE SHIPPING COMPANY, Ltd.**

v.

**The UNITED STATES.**

**No. 587-53.**

United States Court of Claims.

Jan. 11, 1955.

Henry J. Bogatko, New York City, for plaintiff.

John F. Wolf, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

WHITAKER, Judge.

The petition alleges: Plaintiff is a corporation organized under the laws of the British Crown Colony of Hong Kong. It brings this suit for the alleged use of its vessel, the *S. S. Josephine Moller,* by the United States during its occupancy of Japan after that country surrendered in World War II. The suit is brought against the United States only, on the theory that it was in control of the forces occupying Japan, although other nations participated in the occupation, and that, therefore, it is liable for any acts done by the occupying powers.

Defendant defends on the ground that the use of plaintiff's vessel was a use by all of the occupying governments, and not by one alone, and that a suit can be maintained only against the group, and not against the individual governments.

Plaintiff's position cannot be maintained. The occupation of Japan was a joint venture, participated in by the United States of America, the United Kingdom, China, and Russia; and whatever benefit the occupying powers derived from the use of plaintiff's vessel in the laying and repairing of submarine cables was derived by all of them in common and not by any one more than another. Official documents leave no doubt of this.

To begin with, President Roosevelt, acting for the United States of America, Generalissimo Chiang Kai-shek, acting for China, and Prime Minister Churchill, acting for the United Kingdom of Great Britain and Northern Ireland, met at Cairo in 1943, and on December 1, 1943, issued a statement in which they said, among other things:

"The several military missions have agreed upon future military operations against Japan. The Three Great Allies expressed their resolve to bring unrelenting pressure against their brutal enemies by sea, land, and air. This pressure is already rising.

"The Three Great Allies are fighting this war to restrain and punish the aggression of Japan. * * *"

(App. 1 to Publication 2671 of the Department of State, Far Eastern Series 17.)

Later, the representatives of the leaders of the Soviet Union, the United States of America, and Great Britain met at Yalta and on February 11, 1945, issued an agreement, 59 Stat. 1823, in which they said, among other things:

"The leaders of the three Great Powers—the Soviet Union, the United States of America and Great Britain—have agreed that in two or three months after Germany has surrendered and the war in Europe has terminated the Soviet Union shall enter into the war against Japan on the side of the Allies * * *."

(App. 2 to the above cited publication.)

Then, on July 26, 1945, the leaders of the United States, China, and Great Britain issued the Potsdam Proclamation, reading:

"(1) WE—THE PRESIDENT of the United States, the President of the National Government of the Republic of China, and the Prime Minister of Great Britain, representing the hundreds of millions of our countrymen, have conferred and agree that Japan shall be given an opportunity to end this war.

*    *    *    *    *    *

"(5) Following are our terms.

*    *    *    *    *    *

"(7) Until such a new order is established and until there is con-

vincing proof that Japan's war-making power is destroyed, points in Japanese territory to be designated by the Allies shall be occupied to secure the achievement of the basic objectives we are here setting forth.

\*  \*  \*  \*  \*  \*

"(12) The occupying forces of the Allies shall be withdrawn from Japan as soon as these objectives have been accomplished.

\*  \*  \*  \*  \*  \*"

(App. 3 to the above cited publication.)

On August 14, 1945, the Japanese accepted the terms of the above Potsdam Proclamation. (See App. 6 to the above cited publication.)

On September 2, 1945, the Instrument of Surrender, 59 Stat. 1733, was signed, which reads in part as follows:

"We, acting by command of and in behalf of the Emperor of Japan, the Japanese Government and the Japanese Imperial General Headquarters, hereby accept the provisions set forth in the declaration issued by the hands of the Governments of the United States, China and Great Britain on 26 July 1945, at Potsdam, and subsequently adhered to by the Union of Soviet Socialist Republics, which four powers are hereafter referred to as the Allied Powers.

"We hereby proclaim the unconditional surrender *to the Allied Powers* of the Japanese Imperial General Headquarters and of all Japanese armed forces and all armed forces under Japanese control wherever situated.

"We hereby command all Japanese forces \* \* \* to comply with all requirements which may be imposed by *the Supreme Commander for the Allied Powers* or by agencies of the Japanese Government at his direction.

\*  \*  \*  \*  \*  \*

"The authority of the Emperor and the Japanese Government to rule the state shall be subject to the *Supreme Commander for the Allied Powers* who will take such steps as he deems proper to effectuate these terms of surrender." (Italics ours.)

This instrument was signed by the Japanese and by Douglas MacArthur, "Supreme Commander for the Allied Powers," C. W. Nimitz, "United States Representative," and by representatives of China, the United Kingdom, the Union of Soviet Socialist Republics, Australia, Canada, France, Netherlands, and New Zealand. (App. 8 to the above cited publication.)

Finally, on December 27, 1945, the Foreign Ministers of the Union of Soviet Socialist Republics, the United Kingdom, and the United States of America issued the Moscow Agreement 60 Stat. 1899, setting up the Far Eastern Commission. This Agreement read in part as follows:

"A Far Eastern Commission is hereby established composed of the representatives of the Union of Soviet Socialist Republics, United Kingdom, United States, China, France, the Netherlands, Canada, Australia, New Zealand, India, and the Philippine Commonwealth."

II. *Functions*

"A. The functions of the Far Eastern Commission shall be:

"1. To formulate the policies, principles, and standards in conformity with which the fulfillment by Japan of its obligations under the Terms of Surrender may be accomplished.

"2. To review, on the request of any member, any directive issued to the Supreme Commander for the Allied Powers or any action taken by the Supreme Commander involving policy decisions within the jurisdiction of the Commission.

"3. To consider such other matters as may be assigned to it by agreement among the participating Governments reached in accordance with the voting procedure provided for in Article V–2 hereunder.

"B. The Commission shall not make recommendations with regard to the conduct of military operations nor with regard to territorial adjustments.

"C. The Commission in its activities will proceed from the fact that there has been formed an Allied Council for Japan and will respect existing control machinery in Japan, including the chain of command from the United States Government to the Supreme Commander and the Supreme Commander's command of occupation forces."

III. *Functions of the United States Government*

"1. The United States Government shall prepare directives in accordance with policy decisions of the Commission and shall transmit them to the Supreme Commander through the appropriate United States Government agency. The Supreme Commander shall be charged with the implementation of the directives which express the policy decisions of the Commission.

\* \* \* \* \* \*

"The United States Government may issue interim directives to the Supreme Commander pending action by the Commission whenever urgent matters arise not covered by policies already formulated by the Commission; provided that any directives dealing with fundamental changes in the Japanese constitutional structure or in the regime of control, or dealing with a change in the Japanese Government as a whole will be issued only following consultation and following the attainment of agreement in the Far Eastern Commission."

(App. 12 to the above cited publication.)

It is clear that the occupation of Japan was a joint venture of the United States, the United Kingdom, the Union of Soviet Socialist Republics, and China; but does that absolve the individual nations from liability for an act taken on behalf of all?

On August 19, 1946, the Supreme Commander for the Allied Powers directed the Japanese Government to report on the location of property they had seized during the war. It reported that the *Josephine Moller*, which it had seized, was at Yokohama. On December 3, 1946, the Supreme Commander notified the British Government that this vessel was available for return to its owners. Later, however, the Supreme Commander directed the Imperial Japanese Government to retain the vessel until October 15, 1948, for the purpose of laying and repairing submarine cables. Later, other directives were issued ordering further retention of the vessel and it was not until March 24, 1950, that the Supreme Commander directed the Japanese Government to return the vessel to the Government of the United Kingdom. It was actually returned on August 4, 1950.

■ The Allied Powers, of course, was not a body politic. It was an association of sovereign states. Any action taken by the Supreme Commander for the Allied Powers was taken on behalf of the association, of course; but it was also taken on behalf of each one of the Allied Powers. Any action taken by him was taken as the agent of the United States of America, as the agent of Great Britain, and as the agent of China and of Russia. Whatever use there may have been of plaintiff's vessel by the Allied Powers, it was a use by all of them. The Supreme Commander was acting as the agent for each of them.

■ When private parties or private corporations or municipal corporations

enter into a joint venture, the parties are jointly and severally liable for the acts of their agent, and their individual property may be levied upon to satisfy any judgment, at least after the assets of the joint venture have been exhausted. Whether this rule should be applied to sovereign nations engaged in a joint enterprise has never been decided, and we do not now decide it, because we do not think any of the Allied Powers are liable, for the reasons to be stated.

Plaintiff's vessel never came into the possession of the occupying powers. When the Japanese conquered Hong Kong they seized the vessel and it remained in their possession until it was returned to its owners. It is true the Supreme Commander directed them to retain it, but this direction was issued only because the Japanese Government was powerless to act except with the approval of the Supreme Commander.[1] The order directing retention of the vessel read:

"It is directed that the Japanese Ministry of Communications assume responsibility for the operation of the vessel, make the necessary arrangements to man and outfit the ship for cable laying operations and proceed with work already approved by General Headquarters, Supreme Commander for the Allied Powers. * * *"

The laying and repairing of these cables was for the benefit of Japan. Japan itself outfitted the vessel and manned it and used it in laying and repairing the cables. The responsibility for the use of it in so doing is Japan's responsibility. The cables were not for temporary use by the Allied Powers only during their occupation; they were for long-time use extending far beyond the period of occupation. The fact that the occupying powers got an incidental benefit from the use of them during their occupation renders them no more liable for the cost of laying and repairing them than any other person who might use them. That cost must be borne by Japan. That cost includes payment for the use of plaintiff's vessel.

■ Manifestly, the occupying powers are not liable for the cost of what Japan has done to rehabilitate herself, although much of the work of doing so may have been approved by or even directed by the Supreme Commander of the Allied Powers.

Defendant's motion is granted, and plaintiff's petition is dismissed.

It is so ordered.

JONES, C. J., and LARAMORE, MADDEN and LITTLETON, JJ., concur.

1. On September 6, 1945, the President of the United States issued the following order to General MacArthur:

"1. The authority of the Emperor and the Japanese Government to rule the State is subordinate to you as Supreme Commander for the Allied Powers. You will exercise your authority as you deem proper to carry out your mission. Our relations with Japan do not rest on a contractual basis, but on an unconditional surrender. Since your authority is supreme, you will not entertain any question on the part of the Japanese as to its scope.

"2. Control of Japan shall be exercised through the Japanese Government to the extent that such an arrangement produces satisfactory results. This does not prejudice your right to act directly if required. You may enforce the orders issued by you by the employment of such measures as you deem necessary, including the use of force.
* * * * "