**DE–TOM ENTERPRISES, INC.**

v.

**The UNITED STATES.**

No. 379–73.

United States Court of Claims.

March 23, 1977.

Arthur D. Guy, Jr., Newport Beach, Cal., attorney of record, for plaintiff.

Hubert M. Crean, Washington, D. C., with whom was Asst. Atty. Gen. Peter R. Taft, Washington, D. C., for defendant.

Before DAVIS, KASHIWA, and KUN-ZIG, Judges.

## OPINION

PER CURIAM:

This case comes before the court on plaintiff's exceptions to the recommended decision of Senior Trial Judge Mastin G. White, filed July 16, 1976, pursuant to Rule 134(h), having been submitted on the briefs and oral argument of counsel. Upon consideration thereof, since the court agrees with the trial judge's recommended decision (as hereinafter set forth), it hereby affirms and adopts said decision, as supplemented by the following paragraphs of this *per curiam* opinion, as the basis for its judgment in this case.

In addition to the trial judge's discussion, the court points out that plaintiff never sought judicial review (in the California state or federal courts) of the denial by the Riverside County Board of Supervisors of plaintiff's application for a change of zoning from RA–5 to R–1. On the contrary, plaintiff has acquiesced in that decision. We must therefore assume for this case that (a) that action by the County Board conformed with California law relating to zoning regulations (including common law, statutes, and the state Constitution), as well as with the federal Constitution, and (b) the refusal to allow R–1 zoning represented a proper zoning decision within the powers of Riverside County. It is also clear that that zoning action, leading at most to prevention of a rise in market value but not to a destruction of all substantial use, did not constitute a taking by the County under California law. *HFH, Ltd. v. Superior Court of Los Angeles County*, 15 Cal.3d 508, 125 Cal.Rptr. 365, 542 P.2d 237 (1975), *cert. denied*, 425 U.S. 904,

96 S.Ct. 1495, 47 L.Ed.2d 754 (1976).[1] Plaintiff is therefore in the untenable position of urging that, although there was neither a taking nor improper regulatory action by the County entity which refused plaintiff's zoning application, the United States is nevertheless liable for a taking simply because the Air Force influenced Riverside County to adopt that proper and lawful regulatory stance. Such an extraordinary result could not be correct.

Moreover, even if we assume that the County's action was unlawful or even that it amounted to a taking by the County, the United States could not be held liable in this court. If the contention is that the Air Force acted wrongfully in influencing the County Board of Supervisors, we are plainly without jurisdiction because, as the trial judge points out, we have no original jurisdiction in tort. See, e. g., Anglo-American Trading Corp. v. United States, 109 Ct.Cl. 859 (1948). If plaintiff's position is that the Air Force necessarily took plaintiff's property (in the constitutional sense) simply by persuading the County Board not to change the zoning of the property, we must reject such a claim on its merits. Where as here there is no physical invasion of or physical damage to a claimant's property by the United States or its authorized agents,[2] the Government can be held responsible for a Fifth Amendment taking only when its own regulatory activity is so extensive or intrusive as to amount to a taking under the general principle of Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 43 S.Ct. 158, 67

L.Ed. 322 (1922). See, also, United States v. Central Eureka Mining Co., 357 U.S. 155, 168, 78 S.Ct. 1097, 2 L.Ed.2d 1228 (1958); Goldblatt v. Hempstead, 369 U.S. 590, 592, 82 S.Ct. 987, 8 L.Ed.2d 130, ff. (1962). The recent case of Benenson v. United States, Ct.Cl., 548 F.2d 939, 1977 (involving the Willard Hotel in the District of Columbia), is an instance in which Congressional legislation put such substantial and burdensome restrictions on an owner's use of his property that a taking had to be implied. But it is quite different when neither Congress nor a federal agency puts any regulatory burden on the owner but the agency, as an interested landowner, does no more than convince a state or local agency to impose such a burden, in the same way as might any other neighboring property owner or citizen. Here the Air Force was a powerful adjoining landholder, but so could be a large private manufacturer or comparable enterprise, or an organized group of citizens intent on preserving the environment or the character of their locality. In none of these cases would the intervention of the neighbor to persuade a county entity against rezoning the claimant's land constitute an eminent domain taking by the neighbor— whatever else it might be. The United States is thought to have a deep pocket and it is tempting for owners to try to shift to it the costs which they cannot or do not wish to impose on the local entity which actually undertakes the zoning, but the fundamental point is that it is that agency (here the County Board) which adopts, and has the

---

1. Plaintiff invokes Eldridge v. City of Palo Alto, 57 Cal.App.3d 613, 129 Cal.Rptr. 575 (1976, hearing denied July 15, 1976), as modifying the principle of HFH, Ltd., and recognizing that zoning can in some circumstances rise to a taking. The zoning regulation in Eldridge was, however, much more drastic than that involved in the case at bar. The land, when acquired by those claimants, was zoned for single-family residential use on minimum one-acre sites; thereafter, a regulation was adopted which designated the area for "open space use," permitting no less than a ten-acre site per house, all such sites to be subject to "open-space" uses. The gist of those plaintiffs' complaints was that the "open-space" ordinances denied them any reasonable or beneficial use of their land. The California Court of Appeals refused to dismiss the demands for just compensation on their face, holding that many factual issues remained to be resolved—including whether the ten-acre homesites would be salable at all and the reasonableness of the concept that such homesites must without compensation remain "open space." The differences from the instant case are apparent, including the fact that here De-Tom Enterprises complains of a failure to rezone so as to lift the value of the land, not a change in zoning which decreased the pre-existing value.

2. Of course, every physical invasion or damage does not rise to the level of a taking. See, e. g., Avery v. United States, 165 Ct.Cl. 357, 330 F.2d 640 (1964).

power to adopt, the allegedly injurious course, and the federal agency (here the Air Force) is only playing the role of an influential affected landowner trying to persuade the county body to accept its position.[3]

For these reasons, and those given by the Trial Judge, we hold that the plaintiff is not entitled to recover and the petition is dismissed.

## OPINION OF THE TRIAL JUDGE

WHITE, Senior Trial Judge:

The plaintiff asserts a claim under the provision of the Fifth Amendment to the Constitution which declares, "nor shall private property be taken for public use, without just compensation." In asserting this claim, the plaintiff presents for consideration a novel theory concerning an alleged taking by the Government of an interest in land owned by the plaintiff.

The land involved in the present case is a 38.93-acre parcel situated in Riverside County, California. It lies to the east of, and adjacent to, March Air Force Base, which is the home base of the 22nd Bombardment Wing, a unit of the Fifteenth Air Force, Strategic Air Command. The 22nd Bombardment Wing is equipped with B–52 heavy bombers and KC–135 tanker planes. Both the B–52 and the KC–135 are multi-engine jet aircraft.

The plaintiff's property is located sufficiently close to portions of March Air Force Base where noise-producing activities are carried on—e. g., the repair area (where dismounted jet engines are repaired and tested), the warm-up area (where the jet engines of operational aircraft are warmed up before the aircraft proceed to a runway for takeoff), and a north-south runway—that jet-engine noise emanating from March Air Force Base is audible much of the time to anyone on the plaintiff's proper-

ty. However, the plaintiff does not complain in the present case of the impact of such noise on its property. Rather, the plaintiff contends that the noise is not unduly disturbing, and complains that the Air Force prevented it from obtaining a change of zoning that would have permitted the property to be developed for high-density residential purposes. The pertinent circumstances will be summarized in subsequent paragraphs of this opinion.

The 38.93 acres comprising the plaintiff's property (which will usually be referred to hereafter in the opinion as "the property") were acquired by the plaintiff in three separate transactions during the period which began in August 1963 and ended in February 1964. In acquiring the property, it was the plaintiff's intention ultimately to develop it for residential purposes by building low-cost homes on it. However, at the time of the acquisition of the property by the plaintiff, and for a few years thereafter, the property was subject to an M–3 zoning, which was imposed by the Riverside County Board of Supervisors and which restricted the use of the land to manufacturing or industrial purposes. In 1967—without any request for such action having been submitted by the plaintiff—the Board of Supervisors changed the zoning of the property from M–3 to RA–5, which permitted the property to be used for residential-agricultural purposes and to be subdivided into smaller parcels of not less than 5 acres each. The plaintiff did not take advantage of this change of zoning by subdividing the property into 5-acre parcels, as it was still the plaintiff's intention to develop the property for high-density residential purposes. The plaintiff did, however, devote the land to residential-agricultural use by leasing the property to an individual who lived on the property and operated on it a horse-training center and riding school.

3. *Compare the attempt, rejected in* D.R. Smalley & Sons, Inc. v. United States, *178 Ct.Cl. 593, 372 F.2d 505, cert. denied, 389 U.S. 835, 88 S.Ct. 45, 19 L.Ed.2d 97 (1967), by a highway contractor to hold the United States liable, either as a contracting party or as a "taker," for* highway construction undertaken by a state with a financial grant from the Federal Government. *See, also,* Edison Sault Electric Co. v. United States, *Ct.Cl., 552 F.2d 326, pp. 333–334.*

In order for the plaintiff to carry out its intention of developing the property for high-density residential purposes, it was necessary for the plaintiff to obtain from the Riverside County Board of Supervisors a change of zoning for the property, from RA–5 (residential-agricultural, 5-acre minimum) to R–1 (residential, single-family dwellings). Accordingly, on or about July 28, 1971, the plaintiff submitted an application requesting that the zoning of the property be changed from RA–5 to R–1.

The plaintiff's application for a change of zoning was considered and approved by the Riverside County Planning Commission on September 8, 1971, and by the Riverside County Airports Land Use Commission on November 11, 1971. The application then went before the Riverside County Board of Supervisors for final action.

A hearing on the plaintiff's application for a change of zoning was held by the Riverside County Board of Supervisors on November 16, 1971. Only the Air Force appeared at the hearing in opposition to the application. The Air Force was represented by the Staff Judge Advocate of March Air Force Base, who reminded the members of the Board that the Government had invested more than $100,000,000 in March Air Force Base, and expended approximately $70,000,000 per year on operations at the base. The Staff Judge Advocate further stated that it was anticipated by the Air Force that if the area immediately adjacent to the base were to be developed for high-density residential use, complaints about the noise emanating from the base by individuals and groups of individuals living near the base might ultimately compel the Air Force to curtail, or perhaps discontinue, operations at the base; that the property involved in the application was subject to the highest intensity of noise emanating from the base; and that the "encroachment" of high-density residential development on the property would be incompatible with the continued use of March Air Force Base for military operations at the then-current level.

There was also submitted to the Riverside County Board of Supervisors at the hearing a letter from the Commander of March Air Force Base, expressing the view of the Air Force that, because of the impact on the property of jet-engine noise emanating from March Air Force Base, the property would be "highly undesirable for any type of residential use." The letter from the Base Commander further stated in part as follows:

> * * * [T]his property lies only a few hundred feet from the Base jet engine runup areas, and as such, is frequently subject to the most intense noise created on the base.
>
> We are, as you know, highly concerned with any residential encroachment to the Base which would increase citizens' complaints, which the noise problem may well be expected to generate. * * *

The actions of the Staff Judge Advocate and the Base Commander of March Air Force Base in opposing the plaintiff's application for a change of zoning were in accordance with the general policy of the Air Force to prevent, if possible, "encroachments" of high-density residential or commercial developments on lands situated in the immediate vicinity of major military airports. It was the view of the Air Force (as explained more fully in the findings of fact) that if lands located near a major military airport were to be developed for high-density residential or commercial use, individuals and groups of individuals living on or using the lands would be so affected by the noise emanating from the airport that they would register complaints of such volume and intensity as ultimately to compel the curtailment, or perhaps the discontinuance, of the military mission of the airport. The Air Force made a practice of informing local zoning authorities of its view concerning proper land use in the vicinity of military airports, and attempted to persuade such authorities to restrict the use of nearby lands to agricultural or industrial purposes, and not to permit such lands to be used for high-density residential or commercial development.

At the conclusion of the hearing on November 16, 1971, the Riverside County Board of Supervisors denied the plaintiff's application for a change of zoning from RA–5 to R–1.

The evidence in the record warrants the inference that if the Air Force had not opposed the plaintiff's application for a change of zoning, the application would have been approved by the Riverside County Board of Supervisors.

It is the plaintiff's theory of the case, as stated in the petition, that "The coercion exercised by the Department of the Air Force upon the Board of Supervisors * * which has thus prevented reasonable use of The Property constitutes a taking of private property for public use without just compensation * * * [and] violates the Fifth Amendment to the Constitution of the United States."

Even if it is assumed, *arguendo*, that the action of the Air Force in opposing the plaintiff's application for a change of zoning constituted wrongful coercion of the Riverside County Board of Supervisors, such coercion did not result in a taking by the Government from the plaintiff of any property right, title, or interest that the plaintiff had prior to the exercise of such coercion.

Immediately prior to the time when the Riverside County Board of Supervisors—yielding to the assumed coercion of the Air Force—denied the plaintiff's application for a change of zoning, the property was zoned for RA–5 use, which meant that the plaintiff could use the property for residential-agricultural purposes and could subdivide the 38.93-acre parcel into smaller parcels of not less than 5 acres each, if the plaintiff so desired. After the Board of Supervisors denied the plaintiff's application for a change of zoning, the property was still zoned for RA–5 use, so the plaintiff's right, title, and interest in the property were precisely the same as they had been prior to the action of the Board of Supervisors.

Also, the evidence in the record shows that the action of the Riverside County Board of Supervisors in denying the plaintiff's application for a change of zoning did not affect the fair market value of the property in any way. On November 15, 1971, the date preceding the action of the Board of Supervisors, the fair market value of the property, with its RA–5 zoning, was $82,700. On November 17, 1971, the day following the action of the Board of Supervisors, the fair market value of the property, with its RA–5 zoning, was still $82,700.

Therefore, inasmuch as the action of the Air Force in opposing the plaintiff's application for a change of zoning did not result in any diminution of the plaintiff's right, title, or interest in the property, it necessarily follows that there was no *taking* of property by the Government, within the scope of the Fifth Amendment to the Constitution.

The action of the Air Force did prevent the plaintiff from *acquiring* a valuable property right which had not been available to the plaintiff theretofore and which the plaintiff desired to secure, *i. e.*, the right to develop the property for high-density residential purposes. However, it is not within the jurisdiction of this court to determine whether the action of the Air Force was, as alleged by the plaintiff, wrongfully coercive of the Riverside County Board of Supervisors, inasmuch as wrongful coercion would amount to tortious conduct, and tort actions are expressly excluded from the jurisdiction of this court by 28 U.S.C. § 1491.

For the reasons previously stated in this opinion, the plaintiff is not entitled to recover in the present action, and the petition should be dismissed.