**EROSION VICTIMS OF LAKE SUPERIOR REGULATION,**
Plaintiffs–Appellants,

v.

**The UNITED STATES,**
Defendant–Appellee.

No. 87–1279.

United States Court of Appeals,
Federal Circuit.

Nov. 10, 1987.

J. Walter Brock, McCroskey, Feldman, Cochrane & Brock, Muskegon, Mich., argued for plaintiffs-appellants.

Kathleen P. Dewey, Dept. of Justice, Land & Natural Resources Div., Washington, D.C., argued for defendant-appellee. With her on the brief were F. Henry Habicht, II, Asst. Atty. Gen., Edward J. Shawaker and Patricia N. Young.

Before MARKEY, Chief Judge, FRIEDMAN and NIES, Circuit Judges.

MARKEY, Chief Judge.

Appeal from an order of the United States Claims Court dismissing the complaint of Erosion Victims of Lake Superior Regulation for failing to state a claim against the United States. 12 Cl.Ct. 68 (1987). We affirm.

## BACKGROUND *

The United States and Canada are parties to the Boundary Waters Treaty, Jan. 11, 1909, United States–United Kingdom, 36 Stat. 2448, T.S. No. 548, which established an International Joint Commission (IJC) to approve and regulate the use of waters along those countries' common border. *Id.* at 2451.

Soon after the IJC's creation, a private company applied to lease the waters of the St. Mary's River (river), which connects Lake Superior with the lower Great Lakes, for electric power development. The IJC granted the lease in a 1914 order which created an International Lake Superior Board of Control (Board) to oversee and regulate the diversion of the river's waters for power. An objective of the Board was to maintain the level of Lake Superior within certain limits by regulating the amount of water flowing through the power canal in the river at Sault Ste. Marie. The Board was to have two members: one officer of the United States Army Corps of Engineers, and one officer appointed by Canada. International Joint Comm'n, *Further Regulation of the Great Lakes* 81 (1976).

Heavy precipitation in the early 1970's having raised the levels of the lower Great Lakes and caused extensive flooding, the United States in 1973 petitioned the IJC for emergency relief, suggesting that the 1914 order be amended to permit reduction of Lake Superior outflows when necessary to relieve conditions on the lower Great Lakes. The IJC ordered the Board to reduce outflows from Lake Superior. Then,

---

* For more background see *Miller v. United States,* 583 F.2d 857 (6th Cir.1978); *Edison Sault Elec. Co. v. United States,* 552 F.2d 326, 213 Ct.Cl. 309 (1977); and *Soucheray v. Corps of Eng'rs,* 483 F.Supp. 352 (W.D.Wisc.1979).

in 1979, having studied the problem, the IJC formally adopted a plan allowing the Board to consider water levels in the lower Great Lakes when setting outflows from Lake Superior.

The Erosion Victims of Lake Superior Regulation (landowners) own property on the American shore of Lake Superior. In 1986 they sued the United States, saying their properties have "been eroded and/or flooded by waters of Lake Superior due to the actions of the United States, acting through the [IJC]," that the "United States, through the [IJC]," has raised the level of Lake Superior by "direct[ing] the closing of hydroelectric gates" in the river, and that the "actions of the [IJC] were reckless, careless and negligent with the result that the lakefront property of plaintiffs has been lost, damaged and taken contrary to the Fifth Amendment to the United States Constitution." The government disputes each of those allegations, including the allegation that the damage was caused by anything other than natural conditions.

The Claims Court dismissed the complaint, holding that the landowners had failed to state a claim against the United States because "the only relevant actor is the IJC, and ... its actions, even when done in response to defendant's request, are not attributable to the United States." 12 Cl.Ct. at 72.

## ISSUE

Whether the Claims Court erred in dismissing the landowners' complaint.

## OPINION

█ The government argues that the United States cannot be liable for the landowners' alleged damage because the complained-of actions were those of the IJC, an independent international organization. That fact standing alone does not, however, preclude United States liability under the just compensation clause of the Fifth Amendment. Nothing in precedent suggests that *"whenever* the final act of expropriation is by the hand of a foreign sovereign, the United States cannot be held

responsible." *Langenegger v. United States,* 756 F.2d 1565, 1571 (Fed.Cir.) (emphasis in original), *cert. denied,* 474 U.S. 824, 106 S.Ct. 78, 88 L.Ed.2d 64 (1985); *see Turney v. United States,* 115 F.Supp. 457, 463–64, 126 Ct.Cl. 202 (1953) (holding the United States liable for a taking facilitated by an embargo imposed by the Philippine government).

One seeking just compensation from the United States for actions of an international organization must show "sufficient direct and substantial United States involvement." *Langenegger,* 756 F.2d at 1571; *see National Bd. of YMCAs v. United States,* 395 U.S. 85, 93, 89 S.Ct. 1511, 1516, 23 L.Ed.2d 117 (1969). That required showing depends on the sum of two factors: (1) the nature of the United States' activity, and (2) the level of benefit the United States has derived. *Langenegger,* 756 F.2d at 1572. Here, the focus is on the former.

█ The landowners argue that three facts establish the requisite United States involvement in this case: (1) the United States government negotiated the Boundary Waters Treaty; (2) the United States government in 1973 requested that the IJC order reduced outflows from Lake Superior; and (3) a United States government representative supervised the closing of the gates in the power canal at Sault Ste. Marie. Under the precedents of this court and those of our predecessor Court of Claims, those facts do not establish "sufficient direct and substantial United States involvement" to hold the United States responsible for the taking here alleged.

### I. *Treaty Negotiation*

United States participation in an international agreement was involved in *Porter v. United States,* 496 F.2d 583, 204 Ct.Cl. 355 (1974), *cert. denied,* 420 U.S. 1004, 95 S.Ct. 1446, 43 L.Ed.2d 761 (1975). The United States and the United Nations had executed a trusteeship agreement designating the former as the administering authority over the Pacific Islands Trust Territory, which had come under United States military control in World War II. The United

States formally agreed to foster the development of local political institutions, and in time relinquished control over local affairs to local government officials, on whose actions the plaintiffs based their claim. The court held that the plaintiffs had failed to "allege action by [the United States] necessary to make out an unconstitutional taking claim...." 496 F.2d at 592.

The nature of the United States' negotiation and signing of the Boundary Waters Treaty of 1909 suggests less United States involvement here than that alleged in *Porter*. In Articles III, IV and VIII of the Treaty, the United States agreed that the IJC, not the United States, would have final say over the use of boundary waters. 36 Stat. at 2449–52; *see Soucheray v. Corps of Eng'rs*, 483 F.Supp. 352, 355 (W.D.Wisc.1979) ("By signing the Treaty of 1909, the United States gave up any control over the diversion, obstruction and use of boundary waters."). Moreover, the United States' influence on the terms of a treaty negotiated in 1909 is too "nebulous" to make the United States responsible for a taking alleged to have resulted more than 60 years later. *See Langenegger*, 756 F.2d at 1572; *Porter*, 496 F.2d at 592.

## II. *Request to the IJC*

This court and the Court of Claims have previously considered allegations that a United States request for action by another government constitutes direct and substantial United States involvement. For example, mere "diplomatic persuasion" is insufficient for United States liability under the just compensation clause. *Langenegger*, 756 F.2d at 1572 (United States pressure on El Salvador to implement land reform was insufficient involvement for liability to plaintiff whose land the El Salvadoran government expropriated); *De-Tom Enter., Inc. v. United States*, 552 F.2d 337, 213 Ct.Cl. 362 (1977) (per curiam) (United States persuasion of county zoning board not to rezone plaintiff's land adjoining Air Force base insufficient involvement).

▮ The United States' request to the IJC to close the gates at Sault Ste. Marie and modify its method of regulating Lake Superior sought specific action to benefit the United States. In such circumstances, our precedents hold that the United States can be liable where its influence on the government from which action is requested is pervasive. *Compare Turney*, 115 F.Supp. at 463–64 (United States' request to Philippine government to embargo classified equipment mistakenly sold to plaintiff, enabling United States to physically repossess it, was substantial, direct involvement in view of then-pervasive United States military and economic presence) *with Anglo-American Trading Corp. v. United States*, 109 Ct.Cl. 859 (1948) (per curiam) (United States' request to New Zealand government to embargo meat shipments, including those of plaintiff, did not effect a taking).

The landowners here have alleged no facts showing that the United States had the pervasive influence over the IJC that it had, for example, over the Philippine government in *Turney*. They do not dispute this Claims Court statement: "The IJC is a sovereign body which was free to reject the application of the U.S. if it had so decided." 12 Cl.Ct. at 70 (quoting *Edison*, 552 F.2d at 333). Indeed, in *Miller v. United States*, 583 F.2d 857 (6th Cir.1978), on which the landowners rely for the proposition that the United States may be liable for its actions implementing IJC orders (no such implementing actions being here alleged), the court said, "the IJC and its subsidiary boards are international bodies, not agents of the United States ... the United States is not responsible for the formulation and issuance of IJC directives...." 583 F.2d at 865 n. 23. Moreover, as discussed above, the United States agreed in the Boundary Waters Treaty that the IJC, not the United States, would have final say over the use of boundary waters, thus attenuating United States influence.

That the United States *requested* relief from high water levels on the lower Great Lakes supports, rather than negates, the view that the IJC exercised its own discretion in closing the gates. *See Edison*, 552 F.2d at 332–36; *Soucheray*, 483 F.Supp. at

355. The United States' request does not, therefore, evidence direct and substantial United States involvement in the IJC's actions.

### III. *Supervision by a United States Representative*

It is undisputed that the United States Army Corps of Engineers employee who supervised the closing of the power gates at Sault Ste. Marie was acting as a representative of the Board, implementing the IJC's orders. 12 Cl.Ct. at 69; *Edison*, 552 F.2d at 333–34.

█ Under our precedents, a showing that a United States employee has acted as a representative of an international organization does not establish direct, substantial United States involvement. *Josef Best v. United States*, 292 F.2d 274, 279, 154 Ct.Cl. 827 (1961) (no taking by United States in government contract dispute, where Army acted as an agency of Allied High Commission for Germany, an international organization); *Standard–Vacuum Oil Co. v. United States*, 153 F.Supp. 465, 466, 139 Ct.Cl. 113 (no taking by United States where General MacArthur, as Supreme Commander for the Allied Powers, an international organization, delayed ordering Japan to return plaintiff's property while Allied Occupation Forces were using it), *cert. denied*, 355 U.S. 893, 78 S.Ct. 226, 2 L.Ed.2d 191 (1957); *see Anglo–Chinese Shipping Co. v. United States*, 127 F.Supp. 553, 130 Ct.Cl. 361 (same), *cert. denied*, 349 U.S. 938, 75 S.Ct. 783, 99 L.Ed. 1266 (1955).

### CONCLUSION

The landowners having failed to allege facts which might constitute direct and substantial involvement sufficient for United States liability under the just compensation clause of the Fifth Amendment, *Langenegger*, 756 F.2d at 1572, the Claims Court committed no error in dismissing the landowners' complaint.

AFFIRMED.