**George MAY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 07–726 L.

United States Court of Federal Claims.

Feb. 12, 2008.

George May, Palm Beach Gardens, FL, pro se.

Mark S. Barron, with whom was Ronald J. Tenpas, Acting Assistant Attorney General, Environment and Natural Resources Division, U.S. Department of Justice, Washington, DC, for defendant.

## OPINION

HEWITT, Judge.

Before the court are the United States' Motion to Dismiss and Memorandum in Support Thereof (defendant's Motion or Def.'s Mot.), Plaintiff, George May, Opposition to Defendant the United States of America['s] Motion to Dismiss and Memorandum in Support Thereof, and Memorandum in Support Thereof, and Request for the Relief Requested in Plaintiff, George May, Complaint, or for Alternative Dispute Resolution (plaintiff's Response or Pl.'s Resp.) [1], and the United

---

1. In an effort to provide more clarity with respect to citations, the court assigned numbers to the pages of the addenda to plaintiff's Complaint (Compl.) and to plaintiff's filing titled Plaintiff, George May, Opposition to Defendant the United States of America['s] Motion to Dismiss and Memorandum in Support Thereof, and Memorandum in Support Thereof, and Request for the Relief Requested in Plaintiff, George May, Complaint, or for Alternative Dispute Resolution (plaintiff's Response or Pl.'s Resp.). The page following the cover page of each addendum is deemed to have been numbered "1", with page numbers proceeding consecutively thereafter.

In plaintiff's Response, plaintiff "prays that this honorable court enter it's order for the relief requested in [his] complaint, or order . . . the parties to Alternative Dispute Resolution, Sua Sponte." Pl.'s Resp. 6. Appendix H of the Rules of the United States Court of Federal Claims (RCFC) sets out the procedure for Alternative Dispute Resolution (ADR). RCFC App. H. According to the RCFC, "ADR is voluntary." RCFC App. H, 3(a). The court will therefore not order the parties to participate in ADR. In a case—unlike this one—where a motion to dis-

States' Reply in Support of its Motion to Dismiss (defendant's Reply or Def.'s Reply.).

## I. Background

Pro se plaintiff George May filed a complaint with this court October 12, 2007, against "the United States of America, the State of Florida, Charlie Crist, the South Florida Water Management District, Nicolas Jesus Gutierrez, Jr., the Florida Department of Transportation, [and] Ronald McRae ... for the taking [and] condemnation of [plaintiff's] limestone, limestone mining rights, sand, rock, gravel, light, air, [and] view, by flooding, [and] filing court papers turning his property into a flooding easement." Complaint (Compl.) 1. Plaintiff demands payment of just compensation under the Fifth Amendment to the United States Constitution in the amount of $345,500,000. Compl. 3, 5.

Plaintiff asserts that his complaint "clearly identif[ies] a claim against the United States." Pl.'s Resp. 1. In plaintiff's Response, plaintiff states for the first time that his property was taken and condemned "for a Home Land Security device." *Id.* According to plaintiff, the United States failed to pay him just compensation for this taking as a result of the following:

[B]y not meeting federal Title XI of the Financial Institutions Recovery, Reform, and Enforcement Act of 1989, Sec. 1101,

Purpose [12 U.S.C. 3331], required USPAP Appraisals, with certified minerals appraisals affidavit, Federal Land Acquisitions URARPAA–Uniform Relocation Assistance and Real Property Acquisition Act of 1970, (URARPPA), and required Certified Survey, by a Florida licensed registered Surveyor, signed in Blue Ink, with a raised embossed seal, with surveyor's affidavit.

*Id.* at 2 (second alteration in original). Plaintiff further states:

[He] has filed with his complaint evidence that the defendant in contract with the South Florida Water Management District, the Army Corps of Engineers, the Home Land Security, the Florida Department of Transportation, contractor for federal funded I–95, Home Land Security project of security device for taking photos of all car truck license plates have flooded the plaintiff's property by cutting the dike in the East Everglades, and by filing court papers turning plaintiff's property into a flood easement, for their MCCO [Motor Carrier Compliance Office] Truck Weigh Station, "Security Device".

*Id.* at 2–3. Plaintiff alleges that the federally funded highway, I–95, the Patriot Act, and the operation of a Truck Weigh Station by the Department of Homeland Security (DHS) destroyed his business of mixed use real estate development. *Id.* at 4.[2]

miss is denied, the parties may well agree to participate in ADR.

**2.** Plaintiff references various addenda submitted in support of plaintiff's Response, but it is not clear how the materials contained in the addenda relate to the statements for which the addenda are cited as support. Pl.'s Resp. Addenda A–D. For example, in an effort to show that the United States Court of Federal Claims has jurisdiction over his claims, plaintiff states, "See *Preseault v. ICC*, 494 U.S. 1, 110 S.Ct. 914, 108 L.Ed.2d 1 (1990), attached here [as] plaintiff's addendum 'A.' " Pl.'s Resp. 4. Addendum A to plaintiff's Response, however, contains the first page of an article from the website of an organization, Community Rights Counsel, concerning a nominee to this court, one page from the website of an organization, The Appraisal Foundation, titled "Regulatory Info," and one page showing the results of a Google search for "urarpaa of 1970." *Id.* at Addendum A.

Also unclear is the connection between the addenda attached to plaintiff's Complaint and

the claims asserted in the complaint itself. *See* Compl. For example, Addendum C to plaintiff's complaint is cited to show that defendant "robbed" plaintiff of his mining rights. Compl. 4. Addendum C to May's Complaint contains numerous articles and documents that discuss political corruption by Florida officials. *See* Compl. Addendum C 1–10. May does nothing more than make conclusory statements in the margins of these articles as to how the corruption led to the taking of his property. *See* Compl. Addendum C *passim.* Except to assert that "State Agenc[ies were] used as a 'device,' conduit, scheme, fraud for robbery of minerals, oil, property," Compl. Addendum C 10, May offers no concrete evidence of how the alleged corruption resulted in the taking of his property and no indication of how any action that could constitute a taking could be attributed to the United States, *id.* at Addendum C 1–10. Addendum C also contains excerpts from various statutes and historical documents. *Id.* at Addendum C 12–20. However, plaintiff never addresses their relevance in the body of his Complaint. *See* Compl. *passim.*

Plaintiff further alleges that his flooded property in the Everglades of Dade County, Florida, borders property subject to a 1999 decision by this court, *Florida Rock Industries, Inc. v. United States (Florida Rock)*, 45 Fed.Cl. 21 (1999), holding that the denial by the Army Corps of Engineers (Corps) of the *Florida Rock* plaintiff's permit to mine limestone amounted to a compensable regulatory taking. *Id.* at 5. Plaintiff appears to assume that the court's finding of a regulatory taking relating to proposed activities on an adjacent property is sufficient to demonstrate that his claim alleges a set of facts that entitle him to relief. *Id.* Additionally, plaintiff states that "plaintiff's claims are the same as [the claims in *Florida Rock]*, adjoining property, and plaintiff George May, has stated the same claim as the adjoining property owner, Florida Rock." *Id.* at 6. Finally, plaintiff states that he has hired an expert, Michael R. Cartwright, who will testify that the United States and others took plaintiff's property without paying just compensation. *Id.* at 5.

Defendant moves, pursuant to Rule 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC), that the court dismiss plaintiff's Complaint for failure to state a claim upon which relief can be granted. Def.'s Mot. 1. Defendant argues that plaintiff's "Complaint does not identify any federal government action on which a claim against the United States could be asserted." *Id.* According to defendant, "because none of the allegations are directed at the United States or implicate the United States' participation or involvement in the alleged activities, these allegations are insufficient to impose liability on the United States." *Id.* at 4–5 ("Critically, May has neither alleged that the United States or its agents physically occupied his property or caused him to be excluded from his property, or that the United States—as opposed to third parties—regulated his property in some manner that could constitute a compensable taking under the Fifth Amendment of the United States Constitution."). Furthermore, "May has not identified any parcel of real property that has been taken from him or for which he owns mineral rights that he has been impeded from exploiting." Def.'s Reply

9 n. 2. Defendant's observation concerning mineral rights is relevant to, particularly, plaintiff's reliance on *Florida Rock*, which involved denial of permission to mine limestone. See *Florida Rock*, 45 Fed.Cl. at 23.

Defendant asserts that, as a result of plaintiff's numerous previous filings in this court, plaintiff "is aware, or should be aware, of the elements a plaintiff must satisfy to articulate a valid claim for a compensable taking." Def.'s Reply 2. Plaintiff has previously filed ten lawsuits in this court, all of which were dismissed before reaching a decision on the merits. Def.'s Reply 3; see Case No. 96–65; Case No. 96–69; Case No. 97–265; Case No. 97–296; Case No. 97–326; Case No. 97–341; Case No. 97–352; Case No. 97–365; Case No. 97–728; Case No. 98–833. In addition to its request that the court dismiss plaintiff's Complaint for failure to state a claim, defendant requests that "the Court enter an order prohibiting May from filing future complaints without [ob]taining the Court's written permission in advance." Def.'s Reply 6.

## II. Legal Standards

The jurisdiction of the United States Court of Federal Claims is set forth in the Tucker Act, 28 U.S.C. § 1491 (2006). This court "shall have jurisdiction to render judgment upon any claim *against the United States* founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1) (emphasis added). Jurisdiction, then, is limited to suits against the United States. *United States v. Sherwood*, 312 U.S. 584, 588, 61 S.Ct. 767, 85 L.Ed. 1058 (1941); *Howard v. United States*, 74 Fed.Cl. 676, 679 (2006) ("The only defendant against whom suit may properly be brought in this court is the United States government." (citation omitted)); see 28 U.S.C. § 1491(a)(1). "[I]f the relief sought is against others than the United States the suit as to them must be ignored as beyond the jurisdiction of the court." *Sherwood*, 312 U.S. at 588, 61 S.Ct. 767. "[I]f ... maintenance [of the suit] against private parties is prerequisite to

prosecution of the suit against the United States[,] the suit must be dismissed." *Id.*

"When a complaint is filed alleging a Tucker Act claim based on a Constitutional provision, statute, or regulation, see 28 U.S.C. § 1491(a)(1), the trial court at the outset shall determine, ... whether the Constitutional provision, statute, or regulation is one that is money-mandating. If the court's conclusion is that the Constitutional provision, statute, or regulation meets the money-mandating test, the court shall declare that it has jurisdiction over the cause, and shall then proceed with the case in the normal course." *Fisher v. United States (Fisher)*, 402 F.3d 1167, 1173 (Fed.Cir.2005); *see Adair v. United States (Adair)*, 497 F.3d 1244, 1251 (Fed. Cir.2007) (citations omitted) ("If a trial court concludes that the particular statute simply is not money-mandating, then the court shall dismiss the claim for lack of subject matter jurisdiction under Rule 12(b)(1)."). Once a court has taken jurisdiction over a case, the consequence of a plaintiff failing to establish all the elements of its claim is that "plaintiff loses on the merits for failing to state a claim on which relief can be granted." *Fisher*, 402 F.3d at 1175–76; *Adair*, 497 F.3d at 1251 ("If, however, the court concludes that the facts as pled do not fit within the scope of a statute that is money-mandating, the court shall dismiss the claim on the merits under Rule 12(b)(6) for failing to state a claim upon which relief can be granted.").

■ For a takings claim to prevail against a motion to dismiss in this court, the action complained of must be attributable to the United States. *Erosion Victims of Lake Superior Regulation v. United States (Erosion Victims)*, 833 F.2d 297, 301 (Fed.Cir.1987). The United States can be held liable for a Fifth Amendment taking only if there is "physical invasion of or physical damage to a claimant's property by the United States or its authorized agents, ... [or if] its own regulatory activity is so extensive or intrusive as to amount to a taking under the general principle of *[Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393, 43 S.Ct. 158, 67 L.Ed. 322 (1922)]." *De–Tom Enters., Inc. v. United States*, 213 Ct.Cl. 362, 552 F.2d 337, 339 (1977) (footnote and citations omitted).

Furthermore, "a compensable taking does not occur unless the government's actions on the intermediate third party have a 'direct and substantial' impact on the plaintiff asserting the takings claim." *Casa de Cambio Comdiv S.A. de C.V. v. United States*, 291 F.3d 1356, 1361 (Fed.Cir.2002).

"When reviewing a dismissal for failure to state a claim upon which relief can be granted ..., we must accept as true all the factual allegations in the complaint, and we must indulge all reasonable inferences in favor of the [plaintiff]." *Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed.Cir.2001) (citations omitted). In 1957, the United States Supreme Court stated that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson (Conley)*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted). The United States Court of Appeals for the Federal Circuit has therefore followed this doctrine. See, *e.g., Chapman Law Firm Co. v. Greenleaf Constr. Co.*, 490 F.3d 934, 938 (Fed.Cir.2007) (" '[U]nless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief,' the complaint should not be dismissed." (quoting *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99)); *Conti v. United States*, 291 F.3d 1334, 1338 (Fed.Cir.2002) ("The question that the court must answer in reviewing a [12(b)(6)] dismissal order is whether the trial court was correct in concluding that the facts asserted in the complaint do not entitle the plaintiff to a legal remedy. A trial court should not dismiss a complaint for failure to state a claim unless it is 'beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.' " (citations omitted)); *Sommers Oil Co.*, 241 F.3d at 1378 ("A trial court should not dismiss a complaint for failure to state a claim unless it is 'beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief.' " (citing *Hamlet v. United States*, 873 F.2d 1414 (Fed.Cir.1989))).

However, in the 2007 case of *Bell Atl. Corp. v. Twombly (Bell)*, the Supreme Court

reassessed its prior opinion in *Conley. Bell,* —— U.S. ——, —— – ——, —— – ——, 127 S.Ct. 1955, 1964–65, 1968–69, 167 L.Ed.2d 929 (2007). Bell involved the "question of what a plaintiff must plead in order to state a claim under § 1 of the Sherman Act." *Id.* at 1964.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 1964–65 (citations and footnote omitted, alterations in original). The Court held that stating a claim under § 1 "requires a complaint with enough factual matter (taken as true) to suggest that an agreement was made. Asking for plausible grounds to infer an agreement does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *Id.* at 1965 (footnote omitted). The court declined to read the "no set of facts" language in *Conley* in isolation such that "any statement revealing the theory of the claim will suffice unless its factual impossibility may be shown from the face of the pleadings." *Id.* at 1968 ("On such a focused and literal reading of *Conley's* 'no set of facts,' a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." (alteration in original)). Noting that "a good many judges and commentators have balked at taking the literal terms of the *Conley* passage as a pleading standard," the court stated: "[T]he passage should be understood in light of the opinion's preceding summary of the complaint's concrete allegations, which the Court quite reasonably understood as amply stating a claim for relief." *Id.* at 1969. The court concluded its analysis of *Conley* with its determination of how the phrase "no set of facts" should thereafter be viewed:

> The phrase ["no set of facts"] is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Conley,* then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival.

*Id.* (citations and footnote omitted). The court dismissed the Bell plaintiffs' complaint because they failed to "nudge [ ] their claims across the line from conceivable to plausible." *Id.* at 1974 (stating that "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face").

The holding in Bell has not been limited to the antitrust context. *McZeal v. Sprint Nextel Corp. (McZeal),* 501 F.3d 1354, 1356–58 (Fed.Cir.2007) (applying Bell to pleadings alleging trademark infringement). In *McZeal,* the Federal Circuit stated that the language in Bell "does not suggest that [*Bell*] changed the pleading requirement of Federal Rule of Civil Procedure 8 as articulated in *Conley.* In fact, ... [Bell] favorably quoted *Conley.*" *McZeal,* 501 F.3d at 1357 n. 4. The court found that the complaint in *McZeal* "met the low bar for *pro se* litigants" and "contain[ed] enough detail to allow the defendants to answer and thus me[t] the notice pleading required to survive a Rule 12(b)(6) motion." *Id.* at 1357–58 (citations omitted); *see also In re Elevator Antitrust Litig.,* 502 F.3d 47, 50 & n. 3 (2d Cir.2007) (stating that "our precedents support application of [*Bell*] to the conspiracy claims asserted under both Section 1 and Section 2" and that "[a] narrow view of [*Bell*] would have limited its holding to the antitrust context, or perhaps only to Section 1 claims; but we have concluded that [*Bell*] affects pleading standards somewhat more broadly").

Pro se plaintiffs are held to a less stringent standard than plaintiffs represented by counsel and "are entitled to liberal construction of

their pleadings." *Russell v. United States,* 78 Fed.Cl. 281, 286 (2007) (citing *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)). The court "recognizes that pleadings drafted by pro se claimants should not be held to the same standard as pleadings drafted on behalf of those represented by counsel." *Id.* (Citation omitted). "This latitude, however, does not relieve a *pro se* plaintiff from meeting jurisdictional requirements." *Bernard v. United States,* 59 Fed.Cl. 497, 499, *aff'd,* 98 Fed.Appx. 860 (Fed.Cir.2004) (Table).

III.   Discussion

A.   Plaintiff's Failure to State a Claim Upon Which Relief May Be Granted

The jurisdiction of the United States Court of Federal Claims is limited to suits against the United States. *Sherwood,* 312 U.S. at 588, 61 S.Ct. 767; see 28 U.S.C. § 1491 (stating, with certain exceptions, that the Court of Federal Claims "shall have jurisdiction to render judgment upon any claim against the United States"); see *supra* Part II. Plaintiff asserts claims against parties other than the United States. Compl. 1 (stating that plaintiff "does hereby file his complaint against the defendant's ... the State of Florida, Charlie Crist, the South Florida Water Management District, Nicolas Jesus Gutierrez, Jr., the Florida Department of Transportation, [and] Ronald McRae, jointly and severally"). As to these parties, the plaintiff's claims must be "ignored as beyond the jurisdiction of the court." *Sherwood,* 312 U.S. at 588, 61 S.Ct. 767. Plaintiff's Response also mentions that "the Army Corps of Engineers, [and] the Home Land Security ... have flooded the plaintiff's property." Pl.'s Resp. 2–3. The court understands plaintiff's reference to "Home Land Security" to refer to the DHS. This court could have jurisdiction over certain claims asserted against the United States for actions taken by the United States through the Corps and the DHS.

Plaintiff has brought his claim under the Takings Clause of the Fifth Amendment to the United States Constitution. Compl. 3, 5. "[T]he Takings Clause of the Fifth Amendment is money-mandating. Thus, to the extent the [plaintiff] ha[s] a nonfrivolous takings claim founded upon the Fifth Amendment, jurisdiction under the Tucker Act is proper." *Moden v. United States,* 404 F.3d 1335, 1341 (Fed.Cir.2005). The court therefore has jurisdiction over plaintiff's Fifth Amendment takings claims against the United States.

In order to state a claim for a taking, plaintiff must allege action attributable to the United States. *Erosion Victims,* 833 F.2d at 301. May, however, does not allege any action taken by the Corps or DHS that effected a taking of his property. See Compl. *passim;* Pl.'s Resp. *passim;* Def.'s Reply 7–8. May claims that his property was flooded by the cutting of a dike in the East Everglades, Pl.'s Resp. 3, but, as defendant correctly notes, plaintiff "does not allege that the Corp of Engineers cut the dike to which he refers, or that any other entity took action at the Corps' direction or the direction of any other federal actor." Def.'s Reply 7. May also claims that the "operation of the Truck Weigh Station that take[s] photographs of all traffic on I–95 for Home Land Security, destroyed the plaintiff['s] business," Pl.'s Resp. 4, but, as defendant, again correctly, responds, "May does not allege ... that the DHS had any involvement in the construction of the weigh station or describe how taking photographs from this weigh station effects a compensable taking of any particular property in which he has an interest." Def.'s Reply 7–8. As with the Corps, "May does not allege that another party took action related to this weigh station at DHS's direction or the direction of any other federal actor." Def.'s Reply 8. Instead, May's filings indicate that third parties, not the United States, undertook the actions from which May claims relief. See Pl.'s Resp., Addendum A 1 ("[South Florida Water Management District] Flooding By Cutting [Dike]"); Addendum B 2 (discussing the Florida Department of Transportation's Motor Carrier Compliance Office's installation of "a weigh station bypass detection system"); Addendum C ("[South Florida Water Management District] Cut Dikes Flooding My Property"); Def.'s Reply 8. Furthermore, there are discrepancies between the allegations contained in plaintiff's briefing and the documents con-

tained in plaintiff's addenda. *Compare* Pl.'s Resp. 2–3 (stating that the "project of security device for taking photos of all car truck license plates" on I–95 has somehow contributed to the flooding of plaintiff's property) *with* Pl.'s Resp. Addendum B 2–3 (describing a bypass detection system on I–75 with a sole purpose of determining if trucks are avoiding weigh stations and stating that "[e]ach truck exiting the interstate at either of the two exits just before the weigh station ... will trigger cameras to take an image of the truck's license plate"). Plaintiff has not indicated, and the court fails to discern, how the project described in plaintiff's filings could in any way contribute to the flooding of plaintiff's property.

Plaintiff repeatedly asserts that the taking of his property was caused by the Florida Department of Transportation and the South Florida Water Management District. Pl.'s Resp. Addendum A 2 ("Appraisal fraud used to rob my property by S.F.W.M.[,] F.D.O.T.[,] Ron McRae[,] Nick Gutierrez[, and] Charlie Crist."); Pl.'s Resp. Addendum B 2–4 (article discussing the FDOT's Motor Carrier Compliance Office's bypass detection system to determine if trucks are avoiding weigh stations); Compl. Addendum A 5 ("D[i]ke cut by [South Florida Water Management District]"); Compl. Addendum C 1 ("SFWMD cut dikes flooding my property, taking limestone mining rights causing flooding millions of ACRES foot of water tones of water per second to murder S. Florida residents as in New Orleans."). Although plaintiff asserts that the appraisal requirements that were allegedly violated arise under federal law, Pl.'s Resp, Addendum A 2 ("Federal Law Requires USPAP, FIRREA, URARPAA Certified Appraisals With Appraisers Affidavit"), he makes no allegations that such requirements were violated by the United States, *see* Compl. *passim;* Pl.'s Resp. *passim.*

Under *Bell,* the factual allegations in plaintiff's Complaint "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell,* 127 S.Ct. at 1965 (citations and footnote omitted). A Fifth Amendment takings claim

requires action attributable to the United States. *Erosion Victims,* 833 F.2d at 301. Taking all the factual allegations in plaintiff's Complaint as true, May still fails to allege any action taken by the United States that effected a taking of his property. *See* Compl. *passim;* Pl.'s Resp. *passim.* Plaintiff has therefore failed to state a claim upon which relief can be granted and the case must be dismissed under RCFC 12(b)(6). *See Fisher,* 402 F.3d at 1175–76; *Adair,* 497 F.3d at 1251.

Notwithstanding the foregoing, plaintiff argues that, because his property "adjoins" the property addressed by this court in *Florida Rock,* "this court has ruled ... that the plaintiff, George May here claim against the United States here for Just Compensation required by the Fifth Amendment of United States of America Constitution does prove a set of facts that does entitle plaintiff, George May, to relief, and does prove that plaintiff can prove all facts that entitle him to relief." Pl.'s Resp. 5. Nowhere in plaintiff's filings, however, does plaintiff discuss the same issue addressed by this court in *Florida Rock. See* Compl. *passim;* Pl.'s Resp. *passim.* Unlike the plaintiff in *Florida* Rock, plaintiff does not allege a taking arising from the denial of permission to mine limestone. Plaintiff May alleges a taking by the flooding of his property. *Compare Florida Rock,* 45 Fed.Cl. at 23, *with* Compl. 3, *and* Pl.'s Resp. 3. Therefore, the court does not find the decision in *Florida Rock* to have any bearing on its evaluation of the issues in this case.

**B. Sanctions**

This court has authority to impose sanctions on parties pursuant to Rule 11 of the RCFC. Rule 11 states that by filing a complaint in this court, plaintiff "is certifying that ... it is not being presented for any improper purpose, such as to harass ...." and that it is "nonfrivolous." RCFC 11(b)(1)-(2). According to defendant, Mr. May has filed ten suits in the United States Court of Federal Claims since 1996. Def.'s Reply 2–3. The court is without information about plaintiff's intent in filing the suit before it. The court does, however, conclude that Mr. May's complaint in this case is frivolous. Given the

repetitive nature of Mr. May's filings, none of which has been found to be meritorious, the court concurs with defendant that an appropriate sanction should be applied in this case.

■ Under Rule 11, sanctions are "limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated." RCFC 11(c)(2). Nonmonetary directives are permitted. *Id.* Defendant has requested that the court bar Mr. May from filing complaints in this court without first obtaining the court's written permission in advance. Def.'s Reply 6. This court has imposed similar sanctions "[t]o prevent abuse of the judicial process by plaintiff." *Hornback v. United States*, 62 Fed.Cl. 1, 6 (2004); *see also Anderson v. United States*, 46 Fed.Cl. 725, 731 (2000), *aff'd*, 4 Fed.Appx. 871 (Fed.Cir.2001), *cert. denied*, 533 U.S. 926, 121 S.Ct. 2577, 150 L.Ed.2d 713 (2001). This court has previously imposed restrictions on filings by Mr. May. *See* Case No. 97–265, Docket Entry No. 27 (order directing the Clerk of the Court, if future complaints are filed by Mr. May in this court, to notify the pro se screening judge, and any judge to whom the case is assigned, of the previous lawsuits filed by Mr. May). The court considers a directive requiring Mr. May to obtain permission of a judge of this court to file any future complaint in this court to be a sufficient and adequate sanction.

IV. Conclusion

For the foregoing reasons, defendant's motion to dismiss is GRANTED. The Clerk of the Court shall enter judgment dismissing plaintiff's complaint with prejudice. No costs. The court directs that the Clerk of the Court shall not file any future complaint tendered by plaintiff absent written permission granted by a judge of this court.

IT IS SO ORDERED.