On April 6, 1979 the court entered the following order:
Hubert M. Crean, with whom was Assistant Attorney General James W. Moorman, for defendant. Jose N. Uranga and Joseph M. Zorc, of counsel.
Before Friedman, Chief Judge, Davis and Smith, Judges.
This inverse condemnation case comes before the court on defendant’s motion to dismiss for failure to state a claim for which relief can be granted. After considering the motion, without oral argument, the court concludes that plaintiffs claims do not constitute a wrongful taking of property in violation of the fifth amendment to the United States Constitution. Defendant is entitled to judgment.
Plaintiff is the corporate owner and developer of a real property subdivision known as Tahoe Donner, located within the Truckee Sanitary District ("Sanitary District”) near Lake Tahoe in California. The subdivision is composed of approximately 6,000 lots, which are held for sale to the public; approximately 2,500 of these lots have already been sold. In May 1970, the Sanitary District entered into an agreement with plaintiffs predecessor in interest, Lakeworld, under which the District was obligated to provide sewage treatment and disposal services adequate to fill the needs of the Tahoe Donner project. By agreement of February 23, 1971, plaintiff assumed all of its predecessor’s rights and duties under the Sanitary District agreement. On April 25, 1971, the Tahoe-Truckee Sanitary Agency ("Sanitary Agency”) was created by combining the Sanitary District with four other member districts for the purpose of building a regional sewage treatment plant. Upon its formation, the Sanitary Agency became jointly liable for the obligations of its member districts, including the Sanitary District’s agreement to provide adequate sewage treatment for Tahoe Donner.
On July 21, 1975, the Environmental Protection Agency (EPA) finally approved a $23 million grant to the Sanitary Agency, pursuant to the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 et seq. (1976) to build a regional sewage treatment facility. This grant, which represents 75 percent of the planning and construction costs of the Sanitary Agency facility, was designed to permit construction of a plant with a sewage treatment capacity of 4.83 *609 million gallons per day, 7-day average flow ("mgd”), and with 1.16 mgd being that portion of the capacity allocable to the Sanitary District.
In January 1976, a group of purchasers of lots at Tahoe Donner (Richmond, et al.) filed suit against the plaintiff in a California court seeking rescission of their purchase agreements on the ground, inter alia, that the sewage capacity of the Sanitary Agency plant was inadequate to provide sufficient sewer connections for them to develop their unimproved lots. Plaintiff filed a cross-complaint against EPA, the Sanitary Agency, and other public entities, asserting that those agencies must bear the ultimate loss should Richmond, et al., prevail in that litigation. EPA removed the case to the United States District Court for the Eastern District of California and moved to dismiss the cross-complaint on jurisdictional grounds.[1] That motion was granted, and the action was remanded to state court on August 12, 1977, where both the case and the cross-complaint against nonfederal defendants are still pending.[2]
Plaintiff filed the instant suit in this court in September 1977. It alleges that EPA illegally restricted the capacity of the Sanitary Agency sewage treatment plant with the improper purpose of preventing growth; that EPA knew the capacity of the plant would be inadequate to serve the Tahoe Donner project; that as a result of the EPA action, plaintiff was faced with a lawsuit in which Tahoe Donner property owners were demanding rescission and damages; that EPA’s action has rendered plaintiffs remaining property unmarketable; that the EPA has prevented the Sanitary District and the Sanitary Agency from performing their contract with plaintiff; and that, as a result of EPA’s action, the entire Tahoe Donner project, both the lots already sold and those still in the hands of plaintiff, have, in effect, been condemned for public use by EPA. Plaintiff seeks compensation for the alleged taking of its *610 remaining property at Tahoe Donner, as well as indemnification for any amounts it may have to pay as a result of the Richmond action.
The essence of plaintiffs complaint is that EPA, in violation of the fifth amendment, has "taken” plaintiffs real property interest in the Tahoe Donner project and plaintiffs contractual rights under the Sanitary District agreement for sewage treatment services. Plaintiff argues that EPA’s approval of a federal construction grant to the Sanitary Agency constituted a taking of plaintiffs property because the grant was conditioned upon the Sanitary Agency’s limiting the capacity of the new sewage treatment facility to a level insufficient to meet the needs of plaintiffs Tahoe Donner project. We conclude, however, that the action of EPA did not constitute a fifth amendment "taking.”
In approving the construction grant to the Sanitary Agency for the new sewage treatment plant, EPA was performing its statutory function of making grants in accordance with the pertinent standards. Under the authority of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1281 et seq. (1976), and with the purpose of alleviating water pollution problems in the Lake Tahoe area, EPA approved the Sanitary Agency grant. Before doing so, EPA followed required procedures to determine the proper scope of the project and the eligibility of its construction costs for federal reimbursement.[3] The procedures mandated a finding that the "design, size, and capacity of such works are cost effective and relate directly to the needs to be served by such works, including adequate reserve capacity.” 40 C.F.R. § 35.925-7(a) (1978). The agency was also required to conduct an environmental review pursuant to the National Environmental Policy Act, 42 U.S.C. §§ 4321 et seq. (1970), and to consider the resulting Environmental Impact Statement in making the final determination on the project size and eligible costs. See 33 U.S.C. § 1371(c)(1); 40 C.F.R. § 35.925-8 (1978). Thus, in approving the final grant to the Sanitary Agency, EPA was required to ensure that the project complied with *611 federal statutory and regulatory provisions. EPA fulfilled that obligation by approving a final grant of $23 million, which represented 75 percent of the cost of constructing a sewage treatment plant with the capacity of 4.83 mgd.[4]
Even assuming arguendo that this plant will be inadequate to serve the Tahoe Donner project, EPA’s approval of the Sanitary Agency grant did not constitute a "taking” of plaintiffs property. EPA has appropriated neither plaintiffs real property nor its contractual rights to sewage services. Eastport Steamship Corp. v. United States, 178 Ct. Cl. 599, 612, 372 F. 2d 1002, 1011 (1967). Nor has EPA imposed any regulatory burden on the use of plaintiffs property. De-Tom Enterprises, Inc. v. United States, 213 Ct. Cl. 362, 365, 552 F.2d 337, 339 (1977). EPA has prevented neither the Sanitary Agency nor the Sanitary District from providing additional sewage treatment services, either now or in the future, that may be needed to .enable the fulfillment of their contractual obligation under the Sanitary District agreement. All it did was to limit the grant to cover 75 percent of those costs that are properly reimbursable under federal standards.
EPA was under no obligation, statutory or otherwise, to grant funds for the treatment plant at issue here. Once the agency decided to make the grant, it had a statutory responsibility to ensure that federal funds were not used to build a plant, the size of which would, in EPA’s view, adversely affect the environment of the Lake Tahoe area. This court has previously recognized that the government cannot be held liable for adhering to its statutory and regulatory responsibilities in connection with making grants of federal money. In D. R. Smalley & Sons v. United States, 178 Ct. Cl. 593, 597-98, 372 F.2d 505, 507, cert. denied, 389 U.S. 835 (1967), the court stated:
The National Government makes many hundreds of grants each year to the various states, [and] to municipalities, * * * for many kinds of public works * * *. It requires the projects to be completed in accordance with certain standards before the proceeds of the grant will be paid. Otherwise the will of *612 Congress would be thwarted and taxpayers’ money would be wasted. * * * These grants are in reality gifts or gratuities. It would be farfetched indeed to impose liability on the Government for the acts and omissions of the parties who contract to build the projects, simply because it requires the work to meet certain standards and upon approval thereof reimburses the public agency for a part of the costs.
Nor does the government’s insistence that projects built with federal money meet relevant statutory requirements constitute a fifth amendment "taking.” Cf. 178 Ct. Cl. at 598-99. EPA’s performance of its statutory responsibility in dispensing federal funds for the sewage treatment plant thus cannot be converted into a violation of plaintiffs rights for which EPA is liable, by framing the claim as a "taking.”
To the extent that plaintiff also is claiming that EPA interfered with the performance of the Sanitary District agreement, the case sounds in tort and is outside the original jurisdiction of this court. 28 U.S.C. § 1491; Somali Development Bank v. United States, 205 Ct. Cl. 741, 748-50, 508 F.2d 817, 820-22(1974).
it is therefore ordered that defendant’s motion to dismiss is granted. The petition is dismissed.

 EPA argued, and the district court agreed, that the state court had lacked jurisdiction over the cross-complaint against EPA and that therefore the district court was precluded from hearing the cross-complaint under the doctrine of derivative jurisdiction.

 On April 10, 1978, the plaintiff refiled its claims against EPA in a separate action in the Eastern District of California. Pursuant to stipulation, the new action is being held in abeyance, pending the outcome of the Richmond case.

 The Federal Water Pollution Control Act, 33 U.S.C. §§ 1281 et seq., authorizes EPA to make grants to municipalities of 75 percent of the eligible costs of constructing publicly owned sewage treatment works. 33 U.S.C. § 1282(a)(1).

 The statements in this paragraph in the text merely describe the actions EPA took and the agency’s statutory authority and obligations. They do not reflect any views concerning the validity or propriety of those actions.