**UNITED STATES of America**

v.

**255.21 ACRES IN ANNE ARUNDEL COUNTY, MARYLAND, et al.**

Civ. No. PN–87–2810.

United States District Court,
D. Maryland.

Sept. 21, 1989.

Donald F. Rosendorf, U.S. Dept. of Justice, Washington, D.C., for plaintiff.

C. Elyse Vinitsky, Washington, D.C., and Leonard R. Goldstein, Goldstein & Baron, Chtd., College Park, Md., for defendant B W Parkway Associates.

Christopher Sanger, Tucker, Flyer, Sanger & Lewis, Washington, D.C., for defendants B W Parkway Associates and Ameribanc Investors Group.

## OPINION AND ORDER

NIEMEYER, District Judge.

In response to the complaint filed by the United States Government to condemn 255 acres of land adjacent to the National Security Agency in Anne Arundel County, Maryland, the defendant B W Parkway Associates Limited Partnership (Parkway Associates) filed a counterclaim in two counts. Count one alleges inverse condemnation based on conduct engaged in by the Government before this action was commenced and demands $10,000 in damages. Count two alleges "tortious injury to property" arising from the same conduct and demands $80 million in damages.

The Government filed a motion to dismiss the counterclaim on the grounds that (1) it has not consented to be sued by way of counterclaim; (2) count two is in reality an inverse condemnation claim which, under the Tucker Act, must be brought in the United States Claims Court; (3) count two, even if a tort claim, does not allege a claim that complies with the Federal Tort Claims

Act; and (4) the counterclaim is barred by applicable statutes of limitations. For the reasons that are given hereafter, the Court will grant the Government's motion in part and transfer the counterclaim to the United States Claims Court.

## I.

The Government first argues that defendant's counterclaim should be dismissed because the United States cannot be sued by way of counterclaim without its consent.

■ The United States as a sovereign "is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define the court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941). This immunity extends to counterclaims brought in actions initiated by the Government. *See, e.g., United States v. Shaw*, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888 (1940).

■ Although Federal Rule of Civil Procedure 13(a), which *requires* a defendant's answer to state any counterclaim which arises out of the transaction or occurrence that is the subject of the original complaint, operates to mandate a waiver of immunity against counterclaims, Rule 13(d) states that the rules governing counterclaims should not "be construed to enlarge beyond the limits now fixed by law the right to assert counterclaims or to claim credits against the United States...." In light of Rule 13(d), Rule 13(a) has been construed as a limited waiver of immunity in suits brought by the United States, allowing only counterclaims which act as a recoupment to the action. *See, e.g., United States v. Agnew*, 423 F.2d 513, 514 (9th Cir.1970). Because the Government is not seeking a monetary award in this action, defendant's counterclaims are of the nature of an affirmative action, rather than of a recoupment. Therefore, Rule 13(a) will not be construed to waive the government's immunity from this counterclaim.

■ Defendant contends that the Government has waived its immunity to its counterclaims through the Tucker Act, 28

U.S.C. § 1346(a)(2) and § 1491, (which permits the Government to be sued under the Constitution or upon an express or implied contract with the Government), and the Federal Tort Claims Act, 28 U.S.C. § 1346(b), § 2671 *et. seq.* The Government argues that even if defendant could bring an original action against the Government under one of these statutes, such an action could not be brought as a counterclaim because the Government has not consented to be sued under these statutes by way of counterclaim.

A number of cases have addressed the question whether a claim which could be brought as an original action against the government can be brought as a counterclaim. The traditional view is that even if the original action would be proper, the claim cannot be brought as a counterclaim. In *United States v. Joseph Behr & Sons, Inc.,* 110 F.Supp. 286 (N.D.Ill.1953), the court applied this rule:

The Court ... has no jurisdiction to render an affirmative judgment against the United States on a counterclaim. The provision[s] of the Tucker Act, 28 U.S.C.A. § 1346, giving the District Court jurisdiction over certain suits against the United States do not permit the recovery of demands against the United States on counterclaims but refer to original suits and prescribe procedure inconsistent with its use as the basis for a counterclaim.

*Id.* at 287, *citing U.S. v. Nipissing Mines Company,* 206 F. 431 (2nd Cir.1913), *cert. dismissed* 234 U.S. 765, 34 S.Ct. 673, 58 L.Ed. 1582 (1914).

In a number of more recent cases, influenced by concerns for judicial economy, courts have departed from the traditional rule and have allowed claims which could have been brought in an original action to be brought as a counterclaim in an action initiated by the United States. *See* Wright & Miller § 1427, at 144, n. 13 and cases cited therein. In *Thompson v. United States,* 250 F.2d 43 (4th Cir.1957), the Fourth Circuit reviewed the decision of a district court to dismiss counterclaims asserted by the defendant in a breach of contract action initiated by the United States. Although the Fourth Circuit dismissed the appeal, deciding that it was premature, it stated its position on the merits:

[A]ll of the judges of this court are of the opinion that the counterclaims here involved may be asserted in the action instituted by the United States. They arise out of contract and involve less than the sum of $10,000. Congress has given its consent in the Tucker Act, 28 U.S.C. § 1346(a)(2), that the United States be sued on such claims in the District Courts; and we can think of no sound reason why the suit should not take the form of counterclaim filed to a suit instituted by the United States in a District Court, where the amount of the counterclaim does not exceed $10,000.

*Id.* at 44. The court then quoted Chief Judge Magruder, speaking for the First Circuit in *United States v. Silverton,* 200 F.2d 824, 827 (1st Cir.1952):

It is conceded by the government that the defendant in this case could have brought an original action in the court below against the United States for breach of contract, under the Tucker Act. If he had done so, of course the court below, under Rule 42 F.R.C.P., 28 U.S.C., could have consolidated such action with the pending action brought by the United States. It would be the emptiest technicality to hold that the same jurisdiction could not be invoked by way of counterclaim in the action already brought by the United States.

The instant case is distinguishable from *Thompson* in that the counterclaim in that case was of the nature of a recoupment, arising from the same transaction the plaintiff sued upon, whereas the counterclaim in the instant action (1) requests an affirmative recovery and (2) arguably arises from a separate transaction. Nevertheless, because the statutes under which defendant brings its claim concededly authorize suit against the Government in an original action, the reasoning of *Thompson* and *Silverton* is persuasive.

When the Government has consented to be sued with respect to a particular claim, this Court can perceive no legitimate reason why the claim should not be asserted in any manner that the procedural rules permit, whether as an original action, a counterclaim, a cross-claim or a third party claim. *Cf. United States v. Yellow Cab Co.*, 340 U.S. 543, 554, 71 S.Ct. 399, 406, 95 L.Ed. 523 (1971) ("[W]e should not, by refinement of construction, limit that consent [given by the Federal Tort Claims Act] to cases where the procedure is by separate action and deny it where the same relief is sought in a third-party action.") At the hearing on its motion in this case, the Government candidly admitted that it knew of no reason why the Tucker Act or the Federal Tort Claims Act should be interpreted as waiving immunity only as to those claims asserted as original actions. The language of these statutes does not require so restrictive an interpretation. Moreover, with the availability of procedural rules for consolidation of actions and severance, the narrow interpretation urged by the Government would at most be a formality. This Court therefore will follow the line of recent cases that permit the counterclaim. *See, e.g., United States v. Drinkwater*, 434 F.Supp. 457 (E.D.Va. 1977). In *Drinkwater*, the United States sued to quiet title to certain property located in Virginia Beach, Virginia. The defendants filed a counterclaim under the Tucker Act claiming less than $10,000 for the fair rental value of their property and their economic loss due to the cloud on their title since 1969. Deciding that it had jurisdiction over the defendants' claim, the court denied the Government's motion to dismiss, which was based on the fact that the claim was asserted by way of counterclaim.

For all of the reasons given, the Court does not believe that defendant's claims must be dismissed merely because they are asserted as counterclaims. The Court therefore will not grant the Government's motion on this ground.

## II.

The Government next urges that the Court dismiss count two of the counterclaim for lack of jurisdiction.

In count two of its counterclaim, Parkway Associates attempts to state a cause of action under the Federal Tort Claims Act, demanding $80 million in damages. This Court would have exclusive jurisdiction over count two if it did indeed state a claim under the Federal Tort Claims Act. Title 28, U.S.C. § 1346(b) provides, in pertinent part:

[T]he district courts ... shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages ... for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

The Government contends, however, that count two is not a Federal Tort Claims Act action, but an inverse condemnation action, which must be brought under the Tucker Act. Observing that actions under the Tucker Act for more than $10,000 cannot be heard in district court, the Government urges this Court to dismiss count two.

The Tucker Act allows claims which are founded, *inter alia,* "upon the Constitution" or "upon any express or implied contract with the United States" to be brought against the government in the United States Claims Court:

The United States Claims Court shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491. Those claims not exceeding $10,000 may be brought in either district court or the United States Claims Court. *See* 28 U.S.C. § 1346(a)(2).

If, as the Government argues, count two is actually an inverse condemnation action, then, because of the amount in controversy, this Court does not have jurisdiction to hear the action. The Court must therefore determine whether count two is a Federal Tort Claims Act action or an inverse condemnation action. In making this determination, the Court must look beyond the way in which plaintiff characterized his action and consider the actual substance of the allegations. *Cf. Burgess v. Charlottesville Savings and Loan Ass'n,* 477 F.2d 40, 43 (4th Cir.1973) (to sustain federal question jurisdiction, a complaint must allege federal grounds " 'not in mere form, but in substance' and 'not in mere assertion, but in essence and effect.' ") (citations omitted).

In *San Diego Gas and Electric Co. v. San Diego,* 450 U.S. 621, 101 S.Ct. 1287, 67 L.Ed.2d 551 (1981), Justice Brennan defined "inverse condemnation" as follows:

> The phrase "inverse condemnation" generally describes a cause of action against a government defendant in which a landowner may recover just compensation for a "taking" of his property under the Fifth Amendment, even though formal condemnation proceedings in exercise of the sovereign's power of eminent domain have not been instituted by the government entity.

*Id.* at 638, n. 2, 101 S.Ct. at 1297, n. 2 (1981) (Brennan, J. dissenting).

■ An action for inverse condemnation may be brought under the Tucker Act both because it is founded "upon the Constitution" and because it is founded upon an "implied contract with the United States." *See, e.g., Roman v. Velarde,* 428 F.2d 129 (1st Cir.1970).

■ Count two of the counterclaim alleges that the defendant Parkway Associates has been the fee simple record owner of the 255 acres in question since the early 1960's and that since that time, defendant's efforts to develop the property have been thwarted by the Government. The Government allegedly hindered the property's development by engaging "in a continual, concerted and intentional scheme of actions and conduct intended to preclude or prevent Parkway Associates from being able to go forward with constructing improvements upon the subject property, without payment of any compensation to Parkway Associates therefor." The count enumerates a number of specific actions allegedly taken by the Government in furtherance of this scheme. These actions include: failing to honor promises made to Parkway Associates that the Government would allow Parkway Associates to build two large buildings on the property and lease these buildings from Parkway Associates; failing to follow through promptly with representations that the Government would condemn the property; attempting to change utility and road planning in the vicinity of the property in order to delay the availability of sewer and water lines and vehicular access to Parkway Associates' property; and hindering Parkway Associates' efforts to obtain a building permit when Parkway Associates attempted to initiate a limited development of the property. The count alleges that these actions were

> wrongful, in knowing fraud and misrepresentation and/or in total disregard of the Constitutional right of BWPA [Parkway Associates] to be protected against deprivation of its property without due process of law under the Fifth and Fourteenth Amendments, and had the effect of wrongfully and tortiously converting BWPA's property and property rights to the Government's exclusive use, benefit and enjoyment during the entire relevant period prior to the date the Declaration of Taking was filed in this action.

Even though defendant repeatedly recites tortious conduct in count two of the counterclaim, in each case it describes the effect of the conduct as a "taking" of property at a time earlier than the time when the Declaration of Taking was filed in this case. Defendant confirmed at oral argument that its complaint amounts to a claim that the Government deprived it of property interests without compensation. This is the specific claim made in paragraph 19 of the counterclaim, where it is alleged that the Government's tortious conduct "had the effect of wrongfully and tortiously con-

verting [defendants'] property and property rights to the Government's exclusive use, benefit and enjoyment during the entire relevant period prior to the date the Declaration of taking was filed" in violation of constitutional due process as secured by the Fifth and Fourteenth Amendments. Whatever the means used, the Government is accused of having taken defendants' property before the formal condemnation. This is a claim for inverse condemnation.

This conclusion is supported by the First Circuit case of *Roman v. Velarde*, 428 F.2d 129 (1st Cir.1970), in which the court reviewed a district court's decision to dismiss a Federal Tort Claims Act action based upon the government's allegedly wrongful occupation of land claimed to be owned by the plaintiffs. The district court had decided that the government had not consented under the Federal Tort Claims Act to suit on a claim for trespass to land where the issue of title was involved. The First Circuit disagreed, finding that there was nothing in the Federal Tort Claims Act which excepted the tortious conduct alleged in that case from the tortious conduct upon which the government had given its consent to be sued. Nevertheless, the court found that the district court did not have jurisdiction over the claim because it was more appropriately brought in the Court of Claims under the Tucker Act. The court stated, "the FTCA does not provide a supplementary forum for plaintiffs demanding compensation for land permanently taken." *Id.* at 132.

In the instant case, as in *Roman*, even if the Government's actions were tortious, the injury claimed is the permanent taking of plaintiffs' property and the action is thus one for inverse condemnation. Such an action must be brought under the Tucker Act, not under the Federal Tort Claims Act.

Parkway Associates has cited a number of cases for the proposition that the Government actions they complain of have been found *not* to constitute inverse condemnation. *See, e.g., Pitman v. United States*, 546 F.2d 431 (Ct.Cl.1976) (a mere threat to condemn does not constitute a taking); *De–Tom Enterprises, Inc. v. United States*, 552 F.2d 337 (Ct.Cl.1977) (Air Force's "lobbying" against a requested change of zoning which would allow residential development near an Air Force base did not constitute a taking). The fact that the conduct involved in these cases may not have risen to the level of a taking, however, does mean that they are not inverse condemnation *claims*. Moreover, these cases certainly do not stand for the proposition that actions alleging similar conduct should be brought as Federal Tort Claims Act claims.

Parkway Associates also places great reliance on a statement made by the Court of Claims in *De–Tom Enterprises, supra*. Addressing the plaintiff's contention that the Air Force had wrongfully influenced a County Board of Supervisors in a zoning decision, the court stated: "[W]e are plainly without jurisdiction because ... we have no original jurisdiction in tort." *Id.* at 339. That statement, however, does not support the proposition that conduct such as that allegedly engaged in by the Air Force is tortious. As is clear from the context of the statement, the court decided that it need not consider plaintiff's argument that the government's conduct was tortious because it had no original jurisdiction to hear such a claim.

The Government also advanced contentions in this case that the Federal Tort Claims Act cannot serve as the basis for count two because (1) the Act does not permit a claim based upon the failure to exercise or perform a discretionary function, whether or not the discretion involved was abused (28 U.S.C. § 2680(a)); (2) it does not permit any claim arising out of misrepresentations, deceit or interference with contract rights (28 U.S.C. § 2680(h)); (3) the defendant did not first present the claim to the appropriate federal agency and have it finally denied in writing (28 U.S.C. § 2675); and (4) the defendant did not file a claim within two years of the time that the action accrued with the appropriate agency (28 U.S.C. § 2401).

While the defendant sought to amend his counterclaim at the hearing by deleting

certain claims for misrepresentation, that amendment would not cure all the problems associated with bringing count two as an action under the Federal Tort Claims Act. Although an opportunity to permit formal amendment might eliminate some of the tort language relating to claims barred by § 2680(h), if the statute were fairly applied to the essence of count two, little, if anything, would remain. What would remain is the claim for inverse condemnation which, because of the amounts claimed, could only be brought in the Claims Court.

For the foregoing reasons, the Court decides that the exclusive forum for adjudicating the claims of Count II is the United States Claims Court.

### III.

■ The facts giving rise to the allegations in both counts one and two are the same and were incorporated into each count by reference. Count two additionally characterized the Government's conduct as "wrongful," "knowing fraud," "misrepresentation," and "motivated by its perceived requirement" to reserve the land for future use by the National Security Agency. However, no new allegations of conduct are alleged in count two. The nature of the damage alleged in each count is also essentially similar. Count one alleges that the United States "deprived [defendant] of all substantial or reasonable use, enjoyment, economic benefit or economic expectation of or from the subject property" and that the Government's conduct constituted a taking in violation of the Fifth and Fourteenth Amendments. Count two alleges:

> The said actions and conduct were wrongful, were in knowing fraud and misrepresentation and/or in total disregard of the Constitutional right of BWPA to be protected against deprivation of its property without due process of law under the Fifth and Fourteenth Amendments, and had the effect of wrongfully and tortiously converting BWPA's property and property rights to the Government's exclusive use, benefit and enjoyment during the entire relevant

period prior to the date the Declaration of Taking was filed in this action.

Because count one alleges inverse condemnation and the court has determined that count two makes the same claim, the two counts are therefore the same claim based on the same conduct. Defendant's reason for alleging only $10,000 in damages in count one was to give this Court jurisdiction over the claim. *See* 28 U.S.C. § 1346(a)(2). As mentioned above, when the amount of a Tucker Act claim exceeds $10,000, the United States Claims Court has exclusive jurisdiction. *See* 28 U.S.C. § 1491.

Even though count one, which seeks damages of $10,000 under an inverse condemnation claim, appears to be within this Court's jurisdiction, Parkway Associates may not split its cause of action for inverse condemnation merely to obtain jurisdiction in a district court. *See, e.g., State of Washington v. Udall,* 417 F.2d 1310, 1320–21 (9th Cir.1969); *Eccles v. United States,* 396 F.Supp. 792, 795 (D.N.D.1975). Because there is no difference between the allegations in counts one and two, the Court will treat the counts as one claim seeking damages of $80,010,000 under an inverse condemnation theory. Only the United States Claims Court has jurisdiction to hear this claim.

The circumstances under which this Court may transfer an action over which it does not have jurisdiction to another court are delineated in 28 U.S.C. § 1631:

> Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was

actually filed in or noticed for the court from which it is transferred.

Thus, if the Court finds that (1) the claim could have been brought in the Claims Court and (2) a transfer were in the interest of justice, it can transfer the counterclaim to the Claims Court under § 1631. As discussed above, the first element of this test has been met, as this claim can only be heard in the Claims Court.

 In determining whether a transfer is in the interest of justice, the court may consider whether the applicable statute of limitations might prejudice the claimant if, instead of being transferred, the action were dismissed and refiled in the proper court. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467, 82 S.Ct. 913, 916, 8 L.Ed.2d 39 (1962). Because factual questions remain in this case as to when the applicable statute of limitations will run, if indeed it has not already run, the Court believes that the interests of justice require that Parkway Associates be given the advantage, in the Claims Court, of the date it filed the counterclaim in this action. Therefore, the Court will transfer Parkway Associates' action to the Claims Court, rather than dismiss the counterclaim and force Parkway Associates to refile with that court.

For the reasons given it is hereby ORDERED this 20th day of September, 1989, that:

1. The motion of the United States to dismiss the counterclaim of Parkway Associates is hereby granted;

2. The counterclaim (and all counts thereof which the Court has determined are in reality one claim) is severed from this action and transferred to the United States Claims Court; and

3. The Clerk of this Court is directed to transfer copies of the appropriate papers together with this Opinion and Order to the Clerk of the United States Claims Court and to mail a copy of this Opinion and Order to counsel of record.