**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 21 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

        Plaintiff-Appellee,

v.

ERNEST A. LEDFORD, JR. and
RUBY LEE LEDFORD,

        Defendants-Appellants,

  and

80 ACRES OF LAND SITUATED IN
COTTON COUNTY, STATE OF
OKLAHOMA, more or less, situated
in Cotton County, State of Oklahoma;
STATE OF OKLAHOMA, ex rel.
Oklahoma Tax Commission,

        Defendants.

No. 98-6444
(D.C. No. 96-CV-987-C)
(W.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **BALDOCK** , **PORFILIO** , and **BRORBY** , Circuit Judges.

---

*     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

This is an action brought by the United States pursuant to 40 U.S.C. § 258a to condemn land located in Oklahoma that was owned by Ernest and Ruby Lee Ledford. The only issue presented on appeal is what is the correct date of the government's taking of the property. The Ledfords challenge the district court's determination that the date of taking was the date specified in the government's declaration of taking, contending instead that the date should be several years earlier when the government's lake construction project caused stored water to interfere with use of their property. The government argues that the correct date of taking for purposes of this action is whatever date it specified in its declaration, and that the Ledfords' claim that the taking occurred earlier is effectively a counterclaim over which the district court did not have jurisdiction.

Determination of the manner of deciding the date of taking is a question of law subject to de novo review. *See Dang v. UNUM Life Ins. Co.*, 175 F.3d 1186, 1189 (10th Cir. 1999); *United States v. Eltzroth*, 124 F.3d 632, 635 (4th Cir. 1997). Concluding that the government's claim of complete control over

establishing the date of taking is untenable, we vacate the district court's judgment and remand the case for further proceedings.

<div align="center">I</div>

In 1971, the U.S. Army Corps of Engineers began construction of Waurika Lake on a tributary of the Red River northwest of Waurika, Oklahoma. Water impoundment began in 1977, and the project was largely completed by the early 1980s. The Ledfords' property lies about eighteen miles south of the Waurika Dam, and they have claimed since at least 1976 that the project has caused flooding to their property. The government countered that its project did not cause the Ledfords' problems. In 1976, the Ledfords filed a claim for damages against the government pursuant to the Federal Tort Claims Act, but the district court dismissed that claim on immunity grounds. *See Ledford v. United States*, 429 F. Supp. 204, 205 (W.D. Okla. 1977). They subsequently made a number of complaints to public officials, including two Presidents and three senators, that eventually were successful, as in 1994 the Corps was ordered to purchase the property.

In June 1996, the government filed its complaint pursuant to 40 U.S.C. § 258a for the taking of the Ledfords' property.[1] At the same time, it deposited

---

[1] Section 258a, which codified Section 1 of the Declaration of Taking Act, provides as follows:

<div align="right">(continued...)</div>

<div align="center">-3-</div>

$197,107.06 with the district court as the estimated compensation (including interest) due the Ledfords. The declaration of taking stated that the date of taking was July 1, 1983. A Corps official later admitted that the choice of that date was arbitrary, but that they were trying to pick a date when property values were high, since values had subsequently decreased. In their answer, the Ledfords denied the date of taking stated by the government and contended that the taking occurred sometime earlier. In August 1996, the court allowed the Ledfords to withdraw the funds deposited with the court.

In January 1997, the district court appointed a three-member commission and referred the question of just compensation to the commission, granting it the powers set forth in Fed. R. Civ. P. 71A(h) and 53(c), (d)(1), (2). The commission held a hearing at which the Ledfords presented evidence regarding the date of

[1](...continued)

> Upon the filing said declaration of taking and of the deposit in the court, to the use of the persons entitled thereto, of the amount of the estimated compensation stated in said declaration, title to the said lands in fee simple absolute, or such less estate or interest therein as is specified in said declaration, shall vest in the United States of America, and said lands shall be deemed to be condemned and taken for the use of the United States, and the right to just compensation for the same shall vest in the persons entitled thereto; and said compensation shall be ascertained and awarded in said proceeding and established by judgment therein, and the said judgment shall include, as part of the just compensation awarded, interest . . . on the amount finally awarded as the value of the property as of the date of taking, from said date to the date of payment . . . .

taking and both parties presented evidence of the property's value. In June 1998, the commission issued its report stating that the surface value of the property was $85,440 on the date of taking of July 1, 1983. The report stated that the date of taking was based on instructions from the court. The Ledfords filed objections to the report which included an objection to the date of taking. They contended that an engineer who testified at the hearing indicated that, based on flooding and other damage, the actual date of taking was July 1978. Following the government's response, the district court adopted the commission's report in full, stating that the date of taking was July 1, 1983, though without identifying any reasons why it chose this date. In its judgment of just compensation, the court found that considering the valuation determined by the commission and the stipulated value of mineral interests, the government owed the Ledfords an additional $3,340 plus interest of $13,332.91 from the date of taking.

The Ledfords appeal from this judgment. They challenge only the determination of the date of taking, but that determination obviously affects the ultimate valuation of the property. Relying on *United States v. Dow*, 357 U.S. 17 (1958), they contend that the date of taking is not the date arbitrarily chosen by the government in its declaration of taking, but rather the date the government actually took their property by adversely interfering with it, which they contend

occurred on December 4 and 5, 1978. [2] In response, the government contends essentially that it has discretion in choosing the date of taking in an action pursuant to § 258a and that the Ledfords cannot challenge its exercise of that discretion in this proceeding. It further contends that the Ledfords' claim of an earlier date of taking is effectively a counterclaim under the Tucker Act against the government, and that since the amount of the counterclaim exceeds $10,000, [3] only the Court of Federal Claims and not the district court had jurisdiction to hear it. *See* 28 U.S.C. §§ 1346(a)(2), 1491. In support of its position, the government cites, inter alia, *United States v. 101.88 Acres of Land*, 616 F.2d 762, 772 (5th Cir. 1980), and *United States v. 3,317.39 Acres of Land*, 443 F.2d 104, 105-06 (8th Cir. 1971).

---

[2]    It is unclear why this date differs from that contained in the Ledfords' objections to the commission's report.

[3]    It is not apparent from the record or the parties' briefs what the amount of the Ledfords' additional claim is or how the government determined that it exceeded $10,000.

## II

Before addressing the merits of the parties' arguments, we need to address the government's contention that the Ledfords waived the date-of-taking issue in either of two ways. It first argues that the Ledfords waived this claim by withdrawing the estimated just compensation. It cites no authority supporting this argument, and to the extent we consider it at all, *see Phillips v. Calhoun*, 956 F.2d 949, 953 (10th Cir. 1992), we find it inconsistent with the plain language of § 258a. This section allows the original property owner to withdraw the money deposited in the court, with the court's permission, and provides that if the final determination of the amount of compensation exceeds the estimate withdrawn, "the court shall enter judgment against the United States for the amount of the deficiency." Section 258a; *see also* Fed. R. Civ. P. 71A(j). Nothing indicates that by withdrawing the estimated compensation, a party waives any right to contest the determination of the final amount of compensation.

The government also argues that the Ledfords waived the date-of-taking issue by failing to object to the district court's instructions to the commission. The government fails to identify, however, what exactly the Ledfords were supposed to object to. The instructions to which it refers are form instructions that do not direct the commission to use any particular date of taking. The only references to the date of taking in the instructions tell the commission to use that

date to determine the property's fair market value and to identify the date in its report. Though we have no reason to doubt that the court did instruct the commission to use the July 1, 1983 date, [4] nothing in the record shows when or how it gave this instruction. Thus, from what we can tell from the record, the date of taking was an unresolved issue at the time of the hearing, and it seems perfectly reasonable for the Ledfords to have presented evidence on this issue, which they did. It also seems reasonable, and in fact, probably necessary, for them to have included this issue in their objections to the commission's report. [5] On the record before us, there is no basis for concluding that they waived this issue.

## III

Turning to the merits of the appeal, we agree with the Ledfords that the Supreme Court's decision in *Dow* controls the determination of the date of taking.

---

[4]     The commission's report, in which the commission appears to be responding to various predetermined requests for information regarding its effort, stated: "Set forth separately the important material issues that were contested by the parties which you had to resolve," and the response was "1. Date of Taking. 2. Amount of compensation due to owners of [the property]." Appellants' App., Ex. 5 at 5. In responding to a question regarding how it resolved these issues, the report stated: "Date of taking, instructions from the Court that July 1, 1983 was date of taking." *Id.* at 7.

[5]     As will be evident below, it obviously would have been much preferable for the Ledfords to have referred the district court to the *Dow* case in their objections, but their objection included the substance of their challenge to the date of taking and preserved the issue for appeal.

*Dow* was a condemnation proceeding brought by the government under § 258a in the Southern District of Texas. The issue in that case was the determination of the date of taking where the government entered into possession of the property (a pipeline easement) in 1943, [6] but did not file a declaration of taking until 1946. The question arose because ownership of the property changed hands in between the two dates, and Dow, the owner at the time the government filed its declaration of taking, claimed he was entitled to the compensation for the taking.

In rejecting Dow's claim, the Court first noted that there were two ways in which the government may take property pursuant to its power of eminent domain: through physical possession or seizure of the property, in which case "the property owner is provided a remedy under the Tucker Act, 28 U.S.C. §§ 1346(a)(2) and 1491, to recover just compensation;" and condemnation under various statutes. *See Dow*, 357 U.S. at 21. The Court explained that

> [a]lthough in both classes of "taking" cases--condemnation and physical seizure--title to the property passes to the Government only when the owner receives compensation, or when the compensation is deposited into court pursuant to the Taking Act, the passage of title does not necessarily determine the date of "taking." The usual rule is

---

[6]    The government initially instituted a condemnation action in 1943 under various statutes and obtained a court order allowing it immediate possession, which was followed shortly by physical entry and possession. The fact that the government entered into possession based on a court order does not appear to be relevant to the Court's decision, *see Georgia-Pacific Corp. v. United States*, 568 F.2d 1316, 1320 (Ct. Cl. 1978), and the government in this appeal attempt to distinguish *Dow* on this basis.

that if the United States has entered into possession of the property prior to the acquisition of title, it is the former event which constitutes the act of taking. It is that event which gives rise to the claim for compensation and fixes the date as of which the land is to be valued and the Government's obligation to pay interest accrues. . . .

*Id.* at 21-22 (citations omitted). The Court then held that when the government has filed a declaration of taking *after* entering into possession of the property, "a number of considerations have led us to the view that in such cases the date of 'taking' is the date on which the Government entered and appropriated the property to public use." *Id.* at 23. The primary consideration was concern over how the property would be valued if the date were otherwise:

As already noted, in cases where there has been an entry into possession before the filing of a declaration of taking, such entry has been considered the time of "taking" for purposes of valuing the property and fixing the date on which the Government's obligation to pay interest begins to run. To rule that the date of "taking" is the time of filing would confront us with a Hobson's choice. On the one hand, it would certainly be bizarre to hold that there were two different "takings" of the same property, with some incidents of the taking determined as of one date and some as of the other. On the other hand, to rule that for all purposes the time of taking is the time of filing would open the door to anomalous results. For example, if the value of the property changed between the time the Government took possession and the time of filing, payment as of the latter date would not be an accurate reflection of the value of what the property owner gave up and the Government acquired. . . .

There is another reason why we cannot regard the time of filing as the time of the "taking" in cases where the Government has already entered into possession. Because of the uncertainty when, if ever, a declaration would be filed after the Government's entry, manipulations might be encouraged which could operate to the

disadvantage of either the landowner or the United States.  The Government tells us that the declaration of taking procedure may be invoked "solely in the discretion of the administrative officer."  It would thus lie within the power of such an officer to reduce the "just" compensation due the property owner by staying his hand until a market situation favorable to the Government had developed.  Conversely, landowners might be in a position to increase unduly the Government's liability. . . .

*Id.* at 24-25.  Thus, under *Dow*, the date of taking is the earlier of the date the government entered into possession of the property or the date of the declaration of taking.  *See Eltzroth*, 124 F.3d at 636, 638 (following *Dow* in holding that date of valuation of taking is date government entered and appropriated property for its use, not date of declaration).

The government tries to distinguish *Dow* on the basis that it did not expressly address the jurisdictional argument it raises here.  That is a true but insignificant distinction.  The Court was well aware of the provisions of the Tucker Act providing compensation to aggrieved property owners, *see* 357 U.S. at 21, yet it clearly contemplated that any questions regarding the date of taking for compensation purposes be resolved in one proceeding, *see id.* at 24, and gave no indication that a district court would not be the proper tribunal for that proceeding.  Indeed, the Court described what the government wants here--two different dates of taking for the same property--as "bizarre."  *See id.* at 24; *cf. Gaylor v. United States*, 74 F.3d 214, 217 (10th Cir. 1996) ("[T]his court considers itself bound by Supreme Court dicta almost as firmly as by the Court's

-11-

outright holdings, particularly when the dicta is recent and not enfeebled by later statements.").

Moreover, the Federal Circuit, which has appellate jurisdiction over the court whom the government maintains has exclusive jurisdiction for the Ledfords' "counterclaim," specifically rejected the government's theory that district courts lack jurisdiction in such situations. *See Georgia-Pacific*, 568 F.2d at 1321-22. [7] In that case, Georgia-Pacific filed a claim for inverse condemnation in the claims court alleging a taking in 1974-75. The government subsequently filed a condemnation action and declaration of taking in the Southern District of West Virginia. The claims court first noted that "[t]he theory of *Dow*, with its insistence on the date of actual taking as the valuation date and the date from which interest begins to run, seems to us to empower the condemnation court [the Southern District of West Virginia], in a case like this, to find that the actual taking . . . preceded the declaration of taking." *Id.* at 1320. The claims court further noted that only the district court would have jurisdiction over all phases of the litigation, i.e., the government's condemnation claim and the landowner's inverse condemnation claim, because the claims court did not have jurisdiction over the condemnation claim. It then rejected the idea that the landowner was

_____

[7] The Federal Circuit is the successor to the appellate jurisdiction of the Court of Claims and has appellate jurisdiction over the Court of Federal Claims. *See United States v. Kasler Elec. Co.*, 123 F.3d 341, 342 n.2 (6th Cir. 1997).

asserting a "forbidden counterclaim" and that the Tucker Act was somehow implicated. *See id.* at 1321-22. "The condemnation action puts in issue the date of taking if Georgia-Pacific so wills it; if Georgia-Pacific tells the condemnation court, as we think it should, that in the company's view the taking occurred before [the declaration of taking], that court can (in our view) decide the question and determine compensation accordingly--all in its capacity as the condemnation court." *Id.* at 1322. *See also In re Stephenson*, No. 441, 1995 WL 529610, at **4 (Fed. Cir. Aug. 30, 1995) (noting that *Georgia-Pacific* is still binding precedent on that court) (unpublished). [8]

## IV

We therefore conclude that the district court should have considered the Ledfords' argument that the date of taking preceded July 1, 1983, the date stated in the government's declaration of taking. We do not mean to imply that the date of taking is necessarily in December 1978 as the Ledfords claim. According to the government, Mr. Ledford admitted that he continued to farm at least a portion

---

[8]     We note that except for one district court case, the cases the government cites to support its position involve disputes not over when the property was taken, but over what property was taken. *See 101.88 Acres of Land*, 616 F.2d at 768; *3,317.39 Acres of Land*, 443 F.2d at 105-06; *Oyster Shell Prods. Corp. v. United States*, 197 F.2d 1022, 1023 (5th Cir. 1952). Although *United States v. 255.21 Acres in Anne Arundel County*, 722 F. Supp. 235, 239-40 (D. Md. 1989), appears to be to the contrary, it did not discuss *Dow*, and we find it unpersuasive.

of the property after that date.  Thus, the correct date of taking is disputed and will have to be resolved on remand.

The judgment of the district court is VACATED, and the case is remanded for proceedings consistent with this order and judgment.

<div style="margin-left: 55%;">

Entered for the Court


Wade Brorby
Circuit Judge

</div>